IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 09-cv-01676-PAB-KLM

FRANK VIGIL, JR.,

      Plaintiff,

v.

SUSAN JONES,
M.N. MCCORMICK,
M. HILDERBRAND,
ANTHONY DECESARO,
DARRYL PROFFIT, and
COLORADO DEPARTMENT OF CORRECTIONS,

      Defendants.
_____

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on Defendants' **Motion to Dismiss in Part Plaintiff's Complaint (Doc. 9)** [Docket No. 32; Filed December 28, 2009] (the "Motion"). Plaintiff filed a Response to the Motion [Docket No. 35; Filed January 1, 2010]. Pursuant to 28 U.S.C. § 636(b)(1)(A) and D.C.COLO.LCivR 72.1C.3., the Motion has been referred to this Court for a Recommendation. The Court has reviewed the Motion, Plaintiff's Response, the entire case file, and the applicable law and is sufficiently advised in the premises. For the reasons set forth below, the Court respectfully **RECOMMENDS** that the Motion be **GRANTED**.

## I.      Background

At the time of filing the Amended Complaint, Plaintiff was an inmate at the

Centennial Correctional Facility within the Colorado Department of Corrections ("CDOC"). *Amended Complaint* [#9] at 2; *Motion* [#32] at 1.[1] The Amended Complaint named six Defendants: Susan Jones, Centennial Correctional Facility and Colorado State Penitentiary Warden; M.N. McCormick, H.S.M. Supervisor; M. Hildebrand, Programs Manager; Anthony Decesaro, Grievance Officer; Darryl Proffit, Faith and Citizen's Programs Regional Coordinator; and the CDOC. *Amended Complaint* [#9] at 2-3.

Plaintiff asserts that he is an adherent of a faith he labels "Judeo-Christianity."[2] *Id.* at 6. In November 2007, Plaintiff filed a Religion Recognition Form with prison officials requesting that he be classified as "Judeo-Christian" and be permitted to participate in prison sponsored observances of Jewish and Christian holidays. *Id.* Because the CDOC did not recognize "Judeo-Christianity" as an official faith, Plaintiff received notification on January 29, 2008 that he had been classified as Protestant.[3] *Id.* Dissatisfied with the

---

[1] On June 7, 2010, Plaintiff notified the Court that he had been transferred to the Arkansas Valley Correctional Facility in Crowley, CO. *Docket* [#50]. On June 21, 2010 Plaintiff notified the Court that he had again been transferred and is now incarcerated at the Colorado State Prison in Canon City, CO. *Docket* [#51].

[2] "Judeo-Christianity" is a term most frequently used to describe a set of values or principles originating from, or common to, both the Jewish and Christian religions. *See e.g.*, Dennis Prager, *What does 'Judeo-Christian' mean?,* Mar. 30, 2004, http://www.jewishworldview.com/0304/prager_2004_03_30_04.php3; Dennis Prager, *Different theology, same morality*, Mar. 16, 2005, http://www.wnd.com/news/article.asp?ARTICLE_ID=43314; Explanation of "Judeo-Christian," http://reference.findtarget.com/search/Judeo-Christian (last visited Aug. 3, 2010); Definition of "Judeo-Christian," http://www.merriam-webster.com/dictionary/judeo-christian (last visited Aug. 3, 2010).

[3] "In the American context, historians use the term Judeo-Christian to refer to the influence of the Hebrew Bible and New Testament on Protestant thought and values, most especially the Puritan, Presbyterian and Evangelical heritage." Explanation of "Judeo-Christianity," http://en.wikipedia.org/wiki/Judeo-Christian (last visited Aug. 3, 2010). Although the record is unclear, CDOC likely classified Plaintiff as Protestant because "Judeo-Christianity" can be used to refer to Jewish and Christian influences on Protestantism.

classification, and after speaking with the prison chaplin, Plaintiff filed a Faith Group Application on January 30, 2008 in which he requested that the CDOC add "Judeo-Christianity" to its list of recognized religions.  *Id.*  At the same time, Plaintiff filed a second Religion Recognition Form requesting that his religious affiliation be re-classified as Messianic Judaism until Defendants recognized "Judeo-Christianity" as a religion.  *Id.*

On March 5 and March 6, 2008, Plaintiff filed a form with Defendant McCormick requesting that he be allowed to participate in Tanis Esther[4] and Passover Seder.[5]  On March 7, 2008, Defendant McCormick denied these requests because Plaintiff was still classified as Protestant.  *Id.* at 4.

Plaintiff filed a Step One grievance alleging that his rights had been violated because he had not yet received a response to his second Religious Recognition Form or Faith Group Application.  *Id.* at 6-7.  On April 3, 2008, Defendant McCormick denied Plaintiff's Step One grievance.  *Id.*  On April 4, 2008, Plaintiff filed a Step Two grievance which also alleged that his rights were violated by not allowing him to participate in certain prison sponsored religious observances.  *Id.*  On April 18, 2008, Defendant Hildebrand denied Plaintiff's Step Two grievance.  *Id.*  Alleging a violation of his rights based on the same incidents, Plaintiff filed a Step Three grievance on May 8, 2008.  *Id.*  On June 26, 2008, Defendant Decesaro denied Plaintiff's Step Three grievance.  *Id.*

On May 9, 2008, Defendant Proffit denied Plaintiff's first Faith Group Application and

---

[4] Tanis Esther, also known as the Fast of Esther, is a fast from dawn until dusk on Purim eve which commemorates the three-day fast observed by the Jewish people in the story of Purim.

[5] Passover Seder is a ritual feast that marks the beginning of the Jewish holiday of Passover.  The Seder is a ritual that involves the retelling of the story of the Exodus from Egypt.

Plaintiff filed a second Faith Group Application. *Id.* at 7-8. On June 27, 2008, Defendant Proffit denied the second Application. *Id.* Plaintiff alleges that the denials of his Faith Group Applications kept him from being allowed to participate in Communion.[6] *Id.* On April 2, May 6, and July 19, 2008, Plaintiff sent interfacility mail/kites[7] to Defendant Jones detailing the alleged violations of Plaintiff's rights "causing him to not be allowed to participate" in various religious observances. *Id.* at 8. On April 21, 2008, May 30, 2008, and August 4, 2008, Defendant Jones denied the kites. *Id.* Plaintiff alleges that Defendant Jones' denial of these kites prevented Plaintiff from being allowed to participate in Passover Seder on April 19-26, 2008 and Tammuz on July 20, 2008.[8] *Id.*

Plaintiff brought this civil rights action pursuant to 42 U.S.C. § 1983 and the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. §§ 2000cc to 2000cc-5 ("RLUIPA"). *Id.* at 4. The case involves Plaintiff's right to participate in prison sponsored observances in conjunction with his averred religion of "Judeo-Christianity." *Id.* at 6-10. Count One alleges that Defendants violated Plaintiff's rights under the First Amendment and RLUIPA by not allowing him to participate in prison sponsored religious observances. *Id.* Count Two alleges that while other inmates were allowed to practice their religions, Plaintiff was unable to participate in prison sponsored religious observances, resulting in a violation of Plaintiff's Equal Protection rights under the Fourteenth Amendment. *Id.* In both claims, Plaintiff alleges that the CDOC violated his rights, protected by RLUIPA and

---

[6] Communion is a sacrament generally considered by Christians to be a re-enactment of the Last Supper that Jesus Christ shared with his disciples before his arrest and crucifixion.

[7] A kite is a written request from a prison inmate.

[8] The Seventeenth of Tammuz is a minor Jewish fast day which commemorates the breach of the walls of Jerusalem before the destruction of the Second Temple.

the Constitution, by implementing policies and procedures that prevent the recognition of "Judeo-Christianity." *Id. at 8.* Plaintiff requests an injunction requiring all Defendants to recognize "Judeo-Christianity" as a religion. *Id.* at 12-14. Plaintiff also seeks monetary damages and costs from Defendants Jones, McCormick, Hildebrand, Decesaro, and Proffit. *Id.*

Defendants assert that the claims made against them in their official capacities under RLUIPA are barred by the Eleventh Amendment. *Motion* [#32] at 3-4. Defendants also assert that they are entitled to qualified immunity for claims made against them in their individual capacities under § 1983. *Id.* at 10-12. Finally, pursuant to Fed. R. Civ. P. 12(b)(6), Defendants move to dismiss the § 1983 claims for failure to state a claim upon which relief can be granted on the grounds that Plaintiff does not allege personal participation by Defendants or purposeful discrimination under the equal protection claim. *Id.* at 6-9.

## II.     Analysis

### A.     Standard of Review

Defendants move to dismiss Plaintiff's Complaint based on Fed. R. Civ. P. 12(b)(1) and 12(b)(6). A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) attacks a court's subject matter jurisdiction. The determination of a court's jurisdiction over the subject is a threshold question of law. *Madsen v. United States ex. rel. United States Army Corps of Engineers*, 841 F.2d 1011, 1012 (10th Cir. 1987). The objection that a federal court lacks subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) may be raised by a party, or by a court on its own initiative, at any stage in the litigation. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006). If at any time, the Court determines that it lacks subject matter

jurisdiction, the court must dismiss the action.  Fed. R. Civ. P. 12(h)(3); *Arbaugh,* 546 U.S. at 506.  A 12(b)(1) motion may take two forms: a facial attack or a factual attack on the complaint.  When reviewing a facial attack on the complaint pursuant to Rule 12(b)(1), the Court accepts the allegations of the complaint as true.  *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995).  When reviewing a factual attack on a complaint pursuant to Rule 12(b)(1), and when the challenge is supported by affidavits and other documents, the Court makes its own factual findings.  *Id.* at 1003.

A motion to dismiss pursuant to Rule 12(b)(6) tests "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true."  *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994).  To survive a Rule 12(b)(6) motion, "[t]he complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support the plaintiff's allegations."  *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  That is, a complaint must include "enough facts to state a claim to relief that is plausible on its face."  *TON Services, Inc. V. Qwest Corp.,* 493 F.3d 1225, 1235 (10th Cir. 2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the alleged misconduct." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  Moreover, "[a] pleading that offers 'labels and conclusions' or a formulaic recitation of the elements of a cause of action will not do.  Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (citation omitted).

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that defendant has acted unlawfully." *Id.* (citation omitted).

As the Tenth Circuit has explained, "the mere metaphysical possibility that some plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007). However, "[t]he court's function on a 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999) (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Iqbal*, 129 S.Ct. at 1949 (citation omitted).

### B. Plaintiff's *pro se* status

Plaintiff is appearing *pro se.* The Court must construe the filing of a *pro se* litigant liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972)**;** *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, the Court should not be the *pro se* litigant's advocate, nor should the Court "supply additional factual allegations to round out [the *pro se* litigant's] complaint or construct a legal theory on [his or her] behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citing *Hall*, 935 F.2d at 1110). In addition, *pro se* litigants must follow the same procedural rules that govern other litigants. *Nielson v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994).

### C. Eleventh Amendment

Defendants raise the issue of Eleventh Amendment immunity. This challenges a court's subject matter jurisdiction. *Robinson v. Kansas*, 295 F.3d 1183, 1188 (10th Cir.

2002). Here, Plaintiff seeks monetary damages, pursuant to RLUIPA, against the named Defendants in their official capacities. Defendants – officers, agents, and arms of the State of Colorado – argue that the Eleventh Amendment immunizes them from claims made against them in their official capacities. To the extent that the claims are asserted against the CDOC and Defendants in their official capacities for monetary damages, I note that they are immune from liability. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). The Eleventh Amendment protects states and their agents from suit in their official capacities. *Fent v. Okla. Water Res. Bd.*, 235 F.3d 553, 558-59 (10th Cir. 2000). Further, "[n]either states not state officers sued in their official capacity are 'persons' subject to suit under section 1983." *Duncan v. Gunter,* 15 F.3d 989, 991 (10th Cir. 1994).

The same principles apply to Plaintiff's RLUIPA claim. "RLUIPA does not transform a state's acceptance of federal prison funding into a waiver of its Eleventh Amendment immunity from suits for money damages." *Jotunbune v. Sedillo*, No. CIV 06-809, 2010 WL 1781922, at *4 (D.N.M. Apr. 20, 2010) (unpublished decision). RLUIPA provides for an award of "appropriate relief against a government." 42 U.S.C. 2000cc-2(a). Courts in this district and others have stated that it "appear[s]" that the appropriate relief permitted under an official capacity RLUIPA claim is limited to injunctive or declaratory relief. *See Boles v. Neat*, 402 F.Supp.2d 1237, 1240-41 (D. Colo. 2005); *Nasious v. Robinson,* No. 08-cv-00262, 2010 WL 1268135, at *3 (D. Colo. Feb. 17, 2010) (unpublished decision); *Grady v. Holmes*, No. 07-cv-02251, 2008 WL 3539274, at *3 (D. Colo Aug. 12, 2008) (unpublished decision). *Accord Van Wyhe v. Reisch*, 581 F.3d 639, 654-55 (8th Cir. 2009); *Nelson v. Miller*, 570 F.3d 868, 884-85 (7th Cir. 2009); *Cardinal v. Metrish*, 564 F.3d 794, 801 (6th Cir. 2009); *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 331 (5th Cir. 2009);

*Madison v. Virginia*, 474 F.3d 118, 131 (4th Cir. 2006).  In accord with our previous decisions and those of most other courts that have considered the issue, Plaintiff's RLUIPA claim for monetary relief should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1).

Pursuant to RLUIPA, Plaintiff also seeks an injunction.  The Eleventh Amendment does not immunize Defendants from such relief.  *See Green v. Mansour*, 474 U.S. 64, 68 (1985) (noting "that the Eleventh Amendment does not prevent federal courts from granting prospective injunctive relief to prevent a continuing violation of federal law"); *Neiberger v. Hawkins*, 70 F.Supp.2d 1177, 1190 (D. Colo. 1999) (concluding that "federal jurisdiction over the individual Defendants in their official capacities for prospective [injunctive] relief is not barred by the Eleventh Amendment and is instead allowed under the *Ex Parte Young* exception").  Plaintiff's RLUIPA claim for injunctive relief is therefore examined in more detail below.

## D.    RLUIPA

Plaintiff alleges that by denying him the ability to observe "Judeo-Christianity" in prison sponsored observances, Defendants violated his rights under RLUIPA.[9]  Plaintiff requests permanent injunctive relief against each of the named Defendants ordering them to recognize "Judeo-Christianity" as a religion.

RLUIPA provides that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability," unless the government demonstrates that the

---

[9] Plaintiff's Amended Complaint does not assert which section of RLUIPA Defendants allegedly violated, but because the Court construes the filings of a *pro se* litigant liberally, the Court finds Plaintiff's Amended Complaint to be alleging violations of 42 U.S.C. §§ 2000cc to 2000cc-5.

burden furthers a "compelling governmental interest," and does so by "the least restrictive means."  42 U.S.C. § 2000cc-1(a)(1)-(2).  "Religious exercise" includes "any exercise of religion, whether or not compelled by, or central to, a system of religious belief."  42 U.S.C. § 2000cc-5(7)(A).  "The 'exercise of religion' often involves not only belief and profession but the performance of . . . physical acts [such as] assembling with others for a worship service [or] participating in sacramental use of bread and wine . . . ."  *Cutter v. Wilkinson*, 544 U.S. 709, 721 (2005) (quoting *Employment Div. Dept. of Human Resources of Ore. v. Smith*, 494 U.S. 872, 877 (1990)).

To proceed with a RLUIPA claim, Plaintiff must demonstrate that he wishes to engage in (1) a religious exercise (2) motivated by a sincerely held belief, and such exercise (3) is subject to a substantial burden imposed by the government.  *Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1312 (10th Cir. 2010).  The plaintiff bears the initial burden of establishing "the prima facie existence of such a substantial burden" on his religious exercise.  *Warsoldier v. Woodford*, 418 F.3d 989, 995 (9th Cir. 2005).  Bearing the elements of a RLUIPA claim in mind, RLUIPA "shall be construed in favor of a broad protection of religious exercise, the maximum extent permitted by the terms of this chapter and the Constitution."  42 U.S.C. § 2000cc-3(g).  *See Abdulhaseeb*, 600 F.3d at 1316-17 (prisoner presented a genuine issue of material fact as to whether the denial of his requests for an Islamic diet burdened his religious exercise); *Rowe v. Davis*, 373 F.Supp.2d 822, 827 (N.D. Ind. 2005) (prisoner's pleading that a prison official prevented him from meeting with a religious leader of his own faith was sufficient to overcome a Fed. R. Civ. P. 12(b)(6) motion to dismiss).

In examining the first element of a RLUIPA claim, the Court must determine if

Plaintiff wishes to engage in a religious exercise. Plaintiff has alleged that he is an adherent of "Judeo-Christianity" and that he has done everything in his power to practice his faith. *Amended Complaint* [#9] at 5. The term Judeo-Christianity is commonly used to refer to a set of principles, beliefs, ethics, or tradition common to both the Jewish and Christian religions; it is not commonly referred to as an independent religion. *See e.g., Van Orden v. Perry,* 545 U.S. 677, 688, 690 (2005); *Lawrence v. Texas*, 539 U.S. 558, 573 (2003); *Marsh v. Chambers*, 463 U.S. 783, 799 (1983). Plaintiff has stated that he wishes to engage in religious observances in line with Judeo-Christian principles, specifically, he wants to attend both Jewish and Christian observances. Therefore, the Court finds that Plaintiff wishes to engage in religious conduct.

Next, the Court must determine if Plaintiff's religious exercise is motivated by a sincerely held belief. "In assessing this burden, courts must not judge the significance of the particular belief or practice in question. RLUIPA bars inquiry into whether [the] belief or practice is 'central' to a prisoner's religion. RLUIPA does not, however, preclude inquiry into the sincerity of a prisoner's professed religiosity." *Abdulhasseb*, 600 F.3d at 1314 (citing *Lovelace v. Lee,* 472 F.3d 174, 187 (4th Cir. 2006) (quotations and citations omitted)).

At this juncture the Court does not determine the validity of "Judeo-Christianity" as a religion or whether attending prison sponsored religious observances of Judaism and Christianity are a central tenet of Plaintiff's religious practice. However, the Court must note the lack of allegations demonstrating the sincerity of Plaintiff's alleged beliefs. The Amended Complaint speaks to little more than conclusory allegations regarding "violations of [Plaintiff's religious] rights," the dates of denials of Plaintiff's requests for facility

recognition of "Judeo-Christianity," and denials of permission to attend prison-sponsored religious observances.  *See Amended Complaint* [#9].  Such allegations alone do not adequately demonstrate that Plaintiff's religious exercise is "motivated by a sincerely-held belief," as required by RLUIPA.  Indeed, such allegations merely demonstrate that Plaintiff has tried to obtain official recognition of his professed "religion" and to attend services that he deems to be in accordance with that religion.  Because prison religious observances may offer some relief from the regular conditions of prison life (e.g., confinement to a cell, limitations on food, beverages and reading material, limitations on opportunities to socialize, etc.) and may create difficulties in maintaining safety and order within the prison, CDOC's interest in closely supervising inmates' religious practices is manifest.  Moreover, RLUIPA's requirement that a plaintiff demonstrate sincerely-held beliefs mandates Court scrutiny of the precise allegations made by a prisoner about his religion, especially when the prisoner is professing belief in something other than a traditionally recognized religion. Although Judeo-Christian principles have long been identified, explored and observed in various forms of the Protestant, Catholic and Jewish faiths, a form which combines Judaism and Christianity is not widely recognized.[10]  This fact, combined with Plaintiff's generic allegations, creates ample doubt about whether Plaintiff is motivated by a sincerely-held religious belief.

Despite the Court's doubts about the sufficiency of Plaintiff's allegations regarding a sincerely-held belief in "Judeo-Christianity," the Court also examines the third element

---

[10] "If [Judaism and Christianity] had the same beliefs, they would be the same religion. The very term "Judeo-Christian" implies that the two are not the same."  Dennis Prager, *The Case for Judeo-Christian Values*, Feb. 15, 2005, http://www.jewishworldreview.com/0205/prager021505.php3.

of a RLUIPA claim, which involves scrutinizing whether Plaintiff has adequately stated that his exercise of "Judeo-Christianity" has been subjected to a substantial burden. The Tenth Circuit has defined substantial burden within the context of RLUIPA as follows: (1) requiring participation in an activity prohibited by a sincerely-held religious belief, or (2) preventing participation in conduct motivated by a sincerely-held religious belief, or (3) placing substantial pressure on an adherent either not to engage in conduct motivated by a sincerely-held religious belief or to engage in conduct contrary to a sincerely-held religious belief, such as where the government presents the plaintiff with an illusory choice where the only realistically possible course of action trenches on an adherent's sincerely-held religious belief. 42 U.S.C. § 2000-1(a); *Abdulhaseeb*, 600 F.3d at 1315. While it is clear that RLUIPA's protection extends beyond practices that are central to a religion, it is equally clear that not every infringement on a religious exercise will constitute a substantial burden. *Abdulhaseeb*, 600 F.3d at 1316. "The practice burdened need not be central to the adherent's belief system, but the adherent must have an honest belief that the practice is important to his free exercise of religion." *Id.* (citing *Sossamon v. Lone Star State of Texas,* 560 F.3d 316, 332 (5th Cir. 2009)); *see also Smith v. Allen,* 502 F.3d 1255, 1278 (11th Cir. 2007) ("[A]t a minimum the substantial burden test requires that a RLUIPA plaintiff demonstrate that the government's denial of a particular religious . . . observance was more than an inconvenience to one's religious practice.") A burden on religious exercise is "substantial" under RLUIPA if it denies a plaintiff "reasonable opportunities" to engage in a religious exercise. *Caruso v. Zenon*, No. 95-MK-1578, 2005 WL 5957978, at *17 (D. Colo. July 25, 2005) (unpublished decision).

Plaintiff alleges that he has been prevented from participating in conduct motivated

by his belief in "Judeo-Christianity," i.e. Defendants prevented Plaintiff from participating in prison sponsored religious observances of certain Jewish and Christian holidays. *Amended Complaint* [#9] at 5. However, because "Judeo-Christianity" is not a CDOC recognized religion, Plaintiff was classified as Protestant, which made him eligible to observe Protestant ceremonies. *See id.* at 6. Plaintiff has not alleged that he has been denied access to all Protestant prison sponsored religious observances. *Id.* Thus, Defendants have given Plaintiff a reasonable opportunity to participate in prison sponsored ceremonies that observe Judeo-Christian values. As such, Plaintiff has been given access to principles and traditions defined by the Judeo-Christian ethic.

Moreover, Plaintiff has failed to allege that limiting his participation or religious classification to a Christian religion (i.e. Protestantism) has caused an inconvenience on his religious exercise, much less a burden that rises to the level of substantiality. Indeed, he has specified only four services[11] in which he was allegedly denied participation, without further explanation as to their frequency, duration or significance to his professed religious beliefs. Denial of attendance at four services in twenty months (the time period between the filing of Plaintiff's original Religion Recognition Form and the filing of his Amended Complaint) does not, standing alone, constitute a substantial burden on the exercise of religion under RLUIPA. *See e.g., Strope v. Cumings,* No. 05-3385, 2009 WL 3045463, at *3-4 (D. Kan. Sep. 22, 2009) (unpublished decision) (where prisoner had the opportunity to attend religious services, denying him permission to participate in religious services on four occasions did not create a significant burden upon exercise of his religious beliefs); *Smith v. Graziano*, No. 9:08-CV-469, 2010 WL 1330019, at *9 (N.D.N.Y. Mar. 16, 2010)

_____

[11] Tanis Esther, Passover Seder, Communion, and Tammuz.

("[T]he cancellation of two religious services is a *de minimis*, or insubstantial, burden on an inmate's ability to freely exercise his religion.") (citations omitted) (unpublished decision); *Hankins v. NYS Dep't of Corr. Servs.*, No. 9:07-CV-0408, 2008 WL 2019655, at *6 (N.D.N.Y. Mar. 10, 2008) (". . . causing a prisoner to miss one religious service does not constitute a violation of RLUIPA.")

As a result, Plaintiff has failed to sufficiently allege a viable RLUIPA claim. A pleading may survive a motion to dismiss only if it contains "[f]actual allegations . . . enough to raise a right to relief above the speculative level"). *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Nevertheless, the Court finds that given Plaintiff's *pro se* status and the mandate to construe RLUIPA broadly, his RLUIPA claim for injunctive relief should not be dismissed with prejudice. Plaintiff should be granted another opportunity to properly state his RLUIPA claim. *See U.S. v. Celio*, No. 09-1505, 2010 WL 2803416, at *3 (10th Cir. July 16, 2010) (unpublished decision). Accordingly, Plaintiff's RLUIPA claim for injunctive relief should be dismissed without prejudice.[12] *See Arocho v. Nafziger*, No. 07-cv-02603, 2010 WL 681679, at *8 (10th Cir. Mar. 1, 2010) (unpublished decision).

E.     **First Amendment Claim**

Plaintiff's Amended Complaint alleges that Defendants violated his First Amendment rights by not recognizing "Judeo-Christianity" as a religion and by not allowing him to participate in certain prison sponsored religious observances. Defendants move to dismiss

---

[12] For litigants proceeding *in forma pauperis*, the court shall dismiss an action if at any time the case fails to state a claim on which relief may be granted. 28 U.S.C. § 1915(e)(2)(B)(ii). Defendants did not move for dismissal of Plaintiff's RLUIPA claim against Defendant Proffit; however, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), the Court finds that Plaintiff fails to state a RLUIPA claim on which relief may be granted. Therefore, the RLUIPA claim should similarly be dismissed without prejudice against Defendant Proffit.

the First Amendment claim based upon Plaintiff's failure to allege their personal participation in the alleged constitutional violation.

Because there is no constitutional interest in the processing of a grievance, *Johnson v. G.E.O./Lawton Correctional Facility*, No. CIV-04-1407-C., 2005 WL 2739212, at *1 (W.D. Okla. Oct. 24, 2005) (unpublished decision), "[i]ndividual liability under § 1983 must be based on personal involvement in the alleged constitutional violation." *Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir. 1997). Evidence of a party's personal participation in an alleged constitutional violation is essential to stating a § 1983 claim against that party. *Bennett v. Passic*, 545 F.2d 1260, 1262-63 (10th Cir. 1976). An affirmative link must exist between the alleged constitutional violation and the defendant's participation, control or direction. *Stidham v. Peace Officer Standards & Training,* 265 F.3d 1144, 1157 (10th Cir. 2001); *Whitelow v. Stanley*, 06-cv-02256, 2007 WL 4268961, at *6 (D. Colo. Nov. 28, 2007) (unpublished decision). General, conclusory allegations without supporting factual averments are insufficient to state a constitutional claim against a defendant. *Riddle v. Mondragon*, 83 F.3d 1197, 1205 (10th Cir. 1996). Furthermore, a denial of a grievance by itself, without any connection to the violation of constitutional rights alleged by plaintiff, does not establish personal participation under § 1983. *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009) (denial of grievances, without a factual basis to support an "affirmative link" between the defendants and the alleged constitutional violation, does not establish personal participation and therefore fails to state a First Amendment claim); *see also Whitington v. Ortiz*, 307 Fed. Appx. 179, 193 (10th Cir. 2009) (unpublished decision); *Larson v. Meek*, 240 Fed. Appx. 777, 780 (10th Cir. 2007) (unpublished decision).

Plaintiff's Amended Complaint fails to establish an affirmative link between

Defendants and any alleged First Amendment violation. Plaintiff makes no factual allegation upon which the Court could make reasonable inferences as to Defendants' liability. Plaintiff merely cites the filing and denial dates of the Religion Recognition Forms, Faith Group Applications, and grievances. Such dates alone do not comprise sufficient facts to state a claim for a constitutional violation. Instead, the Amended Complaint states conclusory allegations "that [Plaintiff's] rights were being violated" by Defendants.

As to supervisory liability, a defendant may not be held liable under § 1983 merely because of his or her supervisory position. *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986); *McKee v. Heggy*, 703 F.2d 479, 483 (10th Cir. 1983). Instead, supervisory liability requires either personal direction or actual knowledge of and acquiescence in the alleged constitutional violation. *Woodward v. City of Worland*, 977 F.2d 1392, 1400 (10th Cir. 1992); *Meade v. Grubbs*, 841 F.2d 1512, 1528 (10th Cir. 1988). Section 1983 "does not recognize a concept of strict supervisor liability; the defendant's role must be more than one of abstract authority over individuals who actually committed a constitutional violation." *Fogarty v. Gallegos*, 523 F.3d 1147, 1162 (10th Cir. 2008) (citing *Jenkins v. Wood,* 81 F.3d 988, 994-95 (10th Cir. 1996)). "To state a claim in federal court, a complaint must explain what each defendant did to him or her; when the defendant did it; how the defendant's actions harmed him or her, and what specific legal right the plaintiff believes the defendant violated." *Nascious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007).

Plaintiff has not adequately alleged "an affirmative link between the supervisor and the violation, namely the active participation or acquiescence of the supervisor in the [alleged] constitutional violation by the subordinates." *Serna v. Colo. Dep't of Corr.*, 455

17

F.3d 1146, 1151 (10th Cir. 2006). Plaintiff submitted his written grievances in the form of interfacility mail/kites to Defendant Jones. Beyond denying his interfacility mail/kites, there are no allegations that Jones personally participated in the denial of Plaintiff's First Amendment rights or that she failed to supervise those who allegedly violated Plaintiff's rights.

Plaintiff has failed to allege each Defendants' personal participation in the First Amendment claim. Pursuant to Fed. R. Civ. P. 12(b)(6), the First Amendment claim should be dismissed.[13]

## F.  Fourteenth Amendment Claim

Plaintiff alleges that while other inmates were allowed to practice their religions, Defendants' denial of Plaintiff's requests to recognize his faith and participate in prison sponsored religious observances constituted a violation of Plaintiff's equal protection rights under the Fourteenth Amendment. Defendants move to dismiss the equal protection claim because the alleged facts fail to support the existence of a purposeful discriminatory motive.

An equal protection violation occurs when the government treats someone differently from another person who is similarly situated, without adequate justification for the difference in treatment. *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985); *Jacobs, Visconsi & Jacobs, Co. v. City of Lawrence*, 927 F.2d 1111, 1118 (10th Cir.

---

[13] A court, on its own motion, may dismiss an action with respect to prison conditions brought under 42 U.S.C. § 1983 or any other Federal law if the court is satisfied that the action fails to state a claim on which relief may be granted. 42 U.S.C § 1997e(c)(1). Defendants did not move for dismissal of Plaintiff's First Amendment claim against Defendant Proffit; however, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and 42 U.S.C. § 1983, the Court finds that Plaintiff fails to state a First Amendment claim on which relief may be granted. Therefore, the First Amendment claim should similarly be dismissed with prejudice against Defendant Proffit.

1991).  Plaintiff bears the burden of demonstrating discriminatory intent; a Plaintiff must present specific facts which demonstrate that a discriminatory purpose was a motivating factor in the decision attacked by the complaint.  *Watson v. City of Kansas City, Kan.*, 857 F.2d 690, 694 (10th Cir. 1988).  "'Discriminatory purpose' . . . implies more than intent as volition or intent as awareness of consequences.  It implies that the decision maker . . . selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group."  *Personnel Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979).

Here, Plaintiff's claims are conclusory generalizations that Defendants violated his rights in relation to other inmates.  Plaintiff's Amended Complaint states that Defendants "seem to believe the policies that exist with-in [sic] CDOC are superior to the Rights of Mr. Vigil Jr. has [sic] protected under the U.S. Constitution and its statutes.  Each named Defendant continues to refuse to recognize Mr. Vigil, Jr.'s faith, so he don't [sic] get to practice it."  *Amended Complaint* [#9] at 5.  Plaintiff has not pled specific facts to sustain a claim that Defendants acted with purposeful discrimination in denying Plaintiff's Religion Request Forms, Faith Group Applications, or grievances.  Accordingly, pursuant to Fed. R. Civ. P. 12(b)(6), Plaintiff's equal protection claim should be dismissed for failure to state a claim.

### G.    Qualified Immunity

Defendants additionally seek qualified immunity from the individual capacity claims made under § 1983.[14]  Government officials are entitled to qualified immunity from liability

---

[14] The Motion seeks qualified immunity for Defendants Jones, Hildebrand, McCormick, and Decesaro.

for civil damages when their conduct does not violate clearly-established statutory or constitutional rights of which a reasonable person in their position would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity also offers protection from trial and other burdens of litigation. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). The Court's analysis of qualified immunity in the context of a 12(b)(6) motion is a two-part process. One part of the inquiry is whether the facts taken in the light most favorable to the plaintiff sufficiently allege a constitutional violation. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Id.* However, "if a violation could be made out on a favorable view of the parties' submissions, the next [inquiry] . . . is to ask whether the right was clearly established." *Id.* A court may review these factors in any order, using its discretion to determine which of the factors should be reviewed first in light of the circumstances of the case. *Pearson v. Callahan*, 129 S.Ct. 808, 818 (2009).

As I have concluded above, Plaintiff has not stated a tenable § 1983 claim for any of the constitutional violations alleged in the Amended Complaint. Therefore, it is unnecessary to consider the second prong of the qualified immunity analysis. *See Saucier*, 533 U.S. at 201. Accordingly, Defendants are entitled to qualified immunity on Plaintiff's § 1983 individual capacity claims for monetary relief.

### III.    Conclusion

Based on the foregoing,

IT IS HEREBY **RECOMMENDED** that Defendants' Motion to Dismiss be **GRANTED**.

IT IS FURTHER **RECOMMENDED** that Defendants' Motion to Dismiss Plaintiff's RLUIPA claim for monetary damages should be **GRANTED** pursuant to Fed. R. Civ. P. 12(b)(1) for lack of federal subject matter jurisdiction.

IT IS FURTHER **RECOMMENDED** that Defendants' Motion to Dismiss Plaintiff's RLUIPA claim for injunctive relief should be **GRANTED** and that the **dismissal be without prejudice** to Plaintiff filing an amended complaint after the Recommendation has been ruled upon to attempt to assert a viable RLUIPA claim for injunctive relief.

IT IS FURTHER **RECOMMENDED** that Defendants' Motion to Dismiss Plaintiff's First Amendment claim be **GRANTED** pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim.

IT IS FURTHER **RECOMMENDED** that Defendants' Motion to Dismiss Plaintiff's Fourteenth Amendment claim be **GRANTED** pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim.

IT IS FURTHER **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen (14) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. A party's failure to serve and file specific, written objections waives de novo review of the Recommendation by the district judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions, *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1996). A party's objections to this Recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review. *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

DATED: August 9, 2010

                                        BY THE COURT:
                                        /s/ Kristen L. Mix
                                        U.S. Magistrate Judge
                                        Kristen L. Mix