IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 09-cv-01676-PAB-KLM

FRANK VIGIL, JR.,

    Plaintiff,

v.

SUSAN JONES,
M.N. MCCORMICK,
M. HILDERBRAND,
ANTHONY DECESARO,
DARRYL PROFFIT, and
COLORADO DEPARTMENT OF CORRECTIONS,

    Defendants.
_____

### RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on Defendants' **Motion to Dismiss Plaintiff's Amended Prisoner Complaint** [Docket No. 70; Filed Dec. 3, 2010] (the "Motion"). Plaintiff, who is proceeding *pro se*, filed a Response [Docket No. 72] in opposition to the Motion on December 17, 2010.  Pursuant to 28 U.S.C. § 636(b)(1)(A) and D.C.COLO.LCivR 72.1C.3., the Motion has been referred to this Court for a recommendation regarding disposition.  The Court has reviewed the Motion, Plaintiff's Response, the entire case file, and the applicable law, and is sufficiently advised in the premises.  For the reasons set forth below, the Court respectfully **RECOMMENDS** that the Motion be **DENIED**.

## I. Summary of the Case

Plaintiff is an inmate at the Colorado Department of Corrections ("CDOC") Colorado State Penitentiary ("CSP"). On September 23, 2009, he filed an Amended Complaint [Docket No. 9] in which he asserted claims regarding violation of the rights guaranteed to him by the First Amendment and the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. §§ 2000cc to 2000cc-5 ("RLUIPA"). At the time Plaintiff filed the Amended Complaint, he was incarcerated at the CDOC Centennial Correctional Facility ("CCF"). *Amended Complaint* [#9] at 2.

In short, Plaintiff alleged in his Amended Complaint that "he is an adherent of a faith he labels 'Judeo-Christianity.'" *Recommendation* [Docket No. 54] at 2 (quoting *Amended Complaint* [#9] at 6). He alleged that the Colorado Department of Corrections ("CDOC") does not officially recognize this faith, and, as a result, he was denied participation in the following religious services offered at CCF: (1) Passover Seder on April 19-26, 2008; (2) Tammuz on July 20, 2008; (3) Ta'anit Esther on March 19, 2008; and (4) Communion during 2009. *Amended* Complaint [#9] at 7; *Recommendation* [#54] at 3-4 & 14 n.11; *see also id.* at 14 (noting that Plaintiff did not explain in his Amended Complaint the "frequency, duration or significance" of these services).

On December 28, 2009, Defendants filed a Motion to Dismiss in Part [Docket No. 32]. On August 9, 2010, the Court recommended that the Motion be granted and that (1) Plaintiff's Amended Complaint [#9] be dismissed, and (2) Plaintiff be granted leave to amend to attempt to assert a viable RLUIPA claim upon which relief could be granted. *Recommendation* [#54] at 20-21.

On September 13, 2010, District Judge Phillip A. Brimmer adopted the

Recommendation and granted Plaintiff until October 11, 2010 to amend his Amended Complaint to "reassert any claims dismissed without prejudice." *Order* [Docket No. 57] at 9. On October 18, 2010, Plaintiff filed an Amended Amended Complaint [Docket No. 61] (the "Second Amended Complaint") to reassert a RLUIPA claim.

In the Second Amended Complaint, Plaintiff repeats his allegations from the Amended Complaint and supplements his explanation of the sincerity of his professed adherence to "Judeo-Christianity." He also adds a new allegation that he was denied participation in Communion services offered at CCF and CSP during 2010. *Second Amended Complaint* [#61] at 6.

## II. Analysis

### A. Standard of Review

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994); Fed R. Civ. P. 12(b)(6) (A complaint may be dismissed for "failure to state a claim upon which relief can be granted."). To withstand a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain enough allegations of fact 'to state a claim to relief that is plausible on its face.'" *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007) ("The complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support the plaintiff's allegations." (quoting *Twombly*, 550 U.S. at 570)). "A claim has facial plausibility when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. __, 129 S. Ct. 1937, 1949 (2009). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (internal quotation marks omitted). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Sutton v. Utah State Sch. for the Deaf & Blind,* 173 F.3d 1226, 1236 (10th Cir. 1999) (citation omitted).

### B. Plaintiff's *Pro Se* Status

When considering Plaintiff's Second Amended Complaint [#61] and Response [#72], the Court is mindful that it must construe the filings of a *pro se* litigant liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, the Court should not be a *pro se* litigant's advocate, nor should it "supply additional factual allegations to round out [a *pro se* litigant's] complaint or construct a legal theory on [his] behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citing *Hall*, 935 F.2d at 1110). In addition, *pro se* litigants must follow the same procedural rules that govern other litigants. *Nielson v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994).

### C. Plaintiff's Reasserted RLUIPA Claim

Plaintiff alleges that Defendants violated RLUIPA by denying him participation in

certain religious services offered in CDOC prisons.[1] *Second Amended Complaint* [#61] at 1. He asserts that participation in these services is required by his religious beliefs, which he labels "Judaeo-Christianity [sic]." *Id.* Plaintiff seeks permanent injunctive relief in the form of an order directing Defendants to recognize Judeo-Christianity as a religion. *Id.* at 6. As a practical matter, Plaintiff also seeks an order directing Defendants to allow him to participate in Communion and two other services (observances of Ta'anit Esther and the Passover Seder or "The Feast of Unleavened Bread") held at CSP, where he is now incarcerated.[2] *See id.*

RLUIPA provides that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability," unless the government demonstrates that the burden furthers a "compelling governmental interest," and does so by "the least restrictive means." 42 U.S.C. § 2000cc-1(a)(1)-(2). "RLUIPA thus protects institutionalized persons who are unable freely to attend to their religious needs and are therefore dependent on the government's permission and accommodation for exercise of their religion." *Cutter v. Wilkinson*, 544 U.S. 709, 721 (2005). The Court must construe RLUIPA "in favor of a broad

---

[1] Plaintiff's Second Amended Complaint [#61] does not specify which sections of RLUIPA Defendants allegedly violated. After carefully reviewing the Second Amended Complaint, the Court finds that Plaintiff intends to allege violations of 42 U.S.C. §§ 2000cc-2000cc-5. *See Castro v. United States*, 540 U.S. 375, 381 (2003) (Noting that the Court may recharacterize the claims of a *pro se* plaintiff so as "to create a better correspondence between the substance of [the claims] and [their] underlying legal basis").

[2] The Court notes that although Plaintiff alleged that Defendants denied him participation in Tammuz services on July 20, 2008, *Amended Complaint* [#9] at 7, he does not mention Tammuz in his Second Amended Complaint. Accordingly, the Court construes Plaintiff's request for injunctive relief to be limited, i.e., it is only a request for an order directing Defendants to allow him to participate in Ta'anit Esther, the Passover Seder, and Communion services.

protection of religious exercise, to the maximum extent permitted by the terms of [the statute] and the Constitution." 42 U.S.C. § 2000cc-3(g).  Therefore, it must be mindful that the "'exercise of religion' often involves not only belief and profession but the performance of . . . physical acts [such as] assembling with others for a worship service [or] participating in sacramental use of bread and wine." *Cutter*, 544 U.S. at 721 (quoting *Employment Div. Dep't of Human Res. of Ore. v. Smith*, 494 U.S. 872, 877 (1990)); 42 U.S.C. § 2000cc-5(7)(A) ("religious exercise" includes "any exercise of religion, whether or not compelled by, or central to, a system of religious belief").

A plaintiff bears the initial burden of establishing "the prima facie existence" of a substantial burden on his religious exercise.  *Warsoldier v. Woodford*, 418 F.3d 989, 995 (9th Cir. 2005).  To survive a motion to dismiss, a RLUIPA complaint must adequately allege the following: (1) that the plaintiff wishes to engage in a religious exercise; (2) that this wish is motivated by a sincerely held belief; and (3) that the exercise is subject to a substantial burden imposed by the government.  *See Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1312 (10th Cir. 2010).

Because RLUIPA requires a state government to affirmatively permit and accommodate religious exercise by incarcerated persons, the government's burden when defending against a prisoner's RLUIPA claim is more onerous than its burden when defending against a prisoner's constitutional claim.  *See Jotunbane v. Sedillo*, No. CIV 06-809 JB/RHS, 2010 WL 1781922, at *5 (D.N.M. Apr. 20, 2010) (unpublished decision). Therefore, a prisoner plaintiff should, in theory, survive motions to dismiss and motions for summary judgment significantly more often when proceeding under RLUIPA.  *Id.; see, e.g.*,

*Abdulhaseeb*, 600 F.3d at 1316-17 (finding that a prisoner presented a genuine issue of material fact as to whether the denial of his requests for an Islamic diet burdened his religious exercise); *Rowe v. Davis*, 373 F. Supp. 2d 822, 827 (N.D. Ind. 2005) (finding that a prisoner's complaint that a prison official prevented him from meeting with a religious leader was sufficient to survive a Fed. R. Civ. P. 12(b)(6) motion to dismiss).

In this case, the Court addressed the first two elements of Plaintiff's RLUIPA claim in its prior Recommendation [#54]:

> In examining the first element of a RLUIPA claim, the Court must determine if Plaintiff wishes to engage in a religious exercise. Plaintiff has alleged that he is an adherent of "Judeo-Christianity" and that he has done everything in his power to practice his faith. *Amended Complaint* [#9] at 5. The term Judeo-Christianity is commonly used to refer to a set of principles, beliefs, ethics, or tradition common to both the Jewish and Christian religions; it is not commonly referred to as an independent religion. *See e.g., Van Orden v. Perry,* 545 U.S. 677, 688, 690 (2005); *Lawrence v. Texas*, 539 U.S. 558, 573 (2003); *Marsh v. Chambers*, 463 U.S. 783, 799 (1983). Plaintiff has stated that he wishes to engage in religious observances in line with Judeo-Christian principles, specifically, he wants to attend both Jewish and Christian observances. Therefore, the Court finds that Plaintiff wishes to engage in religious conduct.
>
> Next, the Court must determine if Plaintiff's religious exercise is motivated by a sincerely held belief. "In assessing this burden, courts must not judge the significance of the particular belief or practice in question. RLUIPA bars inquiry into whether [the] belief or practice is 'central' to a prisoner's religion. RLUIPA does not, however, preclude inquiry into the sincerity of a prisoner's professed religiosity." *Abdulhasseb*, 600 F.3d at 1314 (citing *Lovelace v. Lee,* 472 F.3d 174, 187 (4th Cir. 2006) (quotations and citations omitted)).
>
> At this juncture the Court does not determine the validity of "Judeo-Christianity" as a religion or whether attending prison sponsored religious observances of Judaism and Christianity are a central tenet of Plaintiff's religious practice. However, the Court must note the lack of allegations demonstrating the sincerity of Plaintiff's alleged beliefs. The Amended Complaint speaks to little more than conclusory allegations regarding "violations of [Plaintiff's religious] rights," the dates of denials of Plaintiff's requests for facility recognition of "Judeo-Christianity," and denials of permission to attend prison-sponsored religious observances. *See Amended*

> *Complaint* [#9]. Such allegations alone do not adequately demonstrate that Plaintiff's religious exercise is "motivated by a sincerely-held belief," as required by RLUIPA. Indeed, such allegations merely demonstrate that Plaintiff has tried to obtain official recognition of his professed "religion" and to attend services that he deems to be in accordance with that religion. Because prison religious observances may offer some relief from the regular conditions of prison life (e.g., confinement to a cell, limitations on food, beverages and reading material, limitations on opportunities to socialize, etc.) and may create difficulties in maintaining safety and order within the prison, CDOC's interest in closely supervising inmates' religious practices is manifest. Moreover, RLUIPA's requirement that a plaintiff demonstrate sincerely-held beliefs mandates Court scrutiny of the precise allegations made by a prisoner about his religion, especially when the prisoner is professing belief in something other than a traditionally recognized religion. Although Judeo-Christian principles have long been identified, explored and observed in various forms of the Protestant, Catholic and Jewish faiths, a form which combines Judaism and Christianity is not widely recognized. FN 3. This fact, combined with Plaintiff's generic allegations, creates ample doubt about whether Plaintiff is motivated by a sincerely-held religious belief.
>
>> FN 3: "If [Judaism and Christianity] had the same beliefs, they would be the same religion. The very term 'Judeo-Christian' implies that the two are not the same." Dennis Prager, *The Case for Judeo-Christian Values*, Feb. 15, 2005, http://www.jewishworldreview.com/0205/prager021505.php3.

*Recommendation* [#54] at 10-12.

In his Second Amended Complaint, Plaintiff has provided additional allegations intended to establish the sincerity of his beliefs. Plaintiff states that he is "only interested in serving God, not any organized religion or religious organization." *Second Amended Complaint* [#61] at 2. He explains that he "believes in . . . both the old and new testaments [sic]; that's Judaism and Christianity," and he asserts that he "must abide by most of the former and all of the latter, which is called Judaeo-Christianity [sic]." *Id.* In his Response, Plaintiff further supplements his allegations by stating that he has "tr[ied] to serve God by observing Holy Day/Commandments from 11/2007 to now." *Id.* He also asserts that he has demonstrated the sincerity of his beliefs by working in prison for "a year to pay the . .

. filing fee [for this lawsuit]; all to serve God." *Id.* In essence, Plaintiff has hand-selected portions of a religious text ("most of" the Old Testament and "all of" the New Testament), professed his adherence to these portions of the text, and labeled his adherence with a term used by scholars to describe the principles in the text, i.e., "Judeo-Christianity."

Plaintiff's supplemental allegations do not assuage the Court's "ample doubts about whether [he] is motivated by a sincerely held religious belief." *Recommendation* [#54] at 12. However, because evaluating the sincerity of Plaintiff's beliefs is "almost exclusively a credibility assessment," the Court finds that conclusively determining whether his beliefs are sincerely held would be "premature at this stage." *Kay v. Bemis*, 500 F.3d 1214, 1219 (10th Cir. 2007) (internal quotation marks omitted) (noting that the sincerity of a plaintiff's purported beliefs "can rarely be determined on a motion to dismiss").

The Court next considers the third element of Plaintiff's RLUIPA claim, i.e., whether Plaintiff has adequately alleged that his exercise of "Judaeo-Christianity [sic]" is subject to a substantial burden. While it is clear that RLUIPA's protection extends beyond practices that are central to a religion, 42 U.S.C. § 2000cc-5(7)(A), it is equally clear that not every infringement on religious exercise will constitute a substantial burden. *Abdulhaseeb*, 600 F.3d at 1316. "The practice burdened need not be central to the adherent's belief system, but the adherent must have an honest belief that the practice is *important* to his free exercise of religion." *Id.* (emphasis added) (citing *Sossamon v. Lone Star State of Texas,* 560 F.3d 316, 332 (5th Cir. 2009)). In short, a burden on religious exercise is "substantial" under RLUIPA if it denies a plaintiff "reasonable opportunities" to engage in such exercise. *Caruso v. Zenon*, No. 95-MK-1578, 2005 WL 5957978, at *17 (D. Colo. July 25, 2005) (unpublished decision); *see also Smith v. Allen,* 502 F.3d 1255, 1278 (11th Cir. 2007) ("[A]t

a minimum the substantial burden test requires that a RLUIPA plaintiff demonstrate that the government's denial of a particular religious . . . observance was more than an inconvenience to one's religious practice.")

The Court of Appeals for the Tenth Circuit has provided several examples of when a burden on religious exercise becomes "substantial."  In *Abdulhaseeb*, the Court held that the government imposes a "substantial burden" on a prisoner within the meaning of RLUIPA when it does any of the following: (1) requires participation in an activity prohibited by a sincerely-held religious belief; (2) prevents participation in conduct motivated by a sincerely-held religious belief; or (3) places substantial pressure on the prisoner to not engage in conduct motivated by his sincerely-held religious belief or to engage in conduct contrary to his sincerely-held religious belief (e.g., where the government presents the prisoner with an illusory choice where the only realistically possible course of action trenches on his sincerely-held religious belief).  600 F.3d at 1315; 42 U.S.C. § 2000-1(a).

In its prior Recommendation [#54], the Court discussed the substantial burden element of Plaintiff's RLUIPA claim as follows:

> Plaintiff alleges that he has been prevented from participating in conduct motivated by his belief in "Judeo-Christianity," i.e. Defendants prevented Plaintiff from participating in prison sponsored religious observances of certain Jewish and Christian holidays.  *Amended Complaint* [#9] at 5.  However, because "Judeo-Christianity" is not a CDOC recognized religion, Plaintiff was classified as Protestant, which made him eligible to observe Protestant ceremonies.  *See id.* at 6.  Plaintiff has not alleged that he has been denied access to all Protestant prison sponsored religious observances. *Id.*  Thus, Defendants have given Plaintiff a reasonable opportunity to participate in prison sponsored ceremonies that observe Judeo-Christian values.  As such, Plaintiff has been given access to principles and traditions defined by the Judeo-Christian ethic.
>
> Moreover, Plaintiff has failed to allege that limiting his participation or religious classification to a Christian religion (i.e. Protestantism) has caused

-10-

>an inconvenience on his religious exercise, much less a burden that rises to the level of substantiality. Indeed, **he has specified only four services, FN 11, in which he was allegedly denied participation, without further explanation as to their frequency, duration or significance to his professed religious beliefs. Denial of attendance at four services in twenty months (the time period between the filing of Plaintiff's original Religion Recognition Form and the filing of his Amended Complaint) does not, standing alone, constitute a substantial burden on the exercise of religion under RLUIPA**. *See e.g., Strope v. Cumings,* No. 05-3385, 2009 WL 3045463, at *3-4 (D. Kan. Sep. 22, 2009) (unpublished decision) (where prisoner had the opportunity to attend religious services, denying him permission to participate in religious services on four occasions did not create a significant burden upon exercise of his religious beliefs); *Smith v. Graziano,* No. 9:08-CV-469, 2010 WL 1330019, at *9 (N.D.N.Y. Mar. 16, 2010) ("[T]he cancellation of two religious services is a *de minimis*, or insubstantial, burden on an inmate's ability to freely exercise his religion.") (citations omitted) (unpublished decision); *Hankins v. NYS Dep't of Corr. Servs.,* No. 9:07-CV-0408, 2008 WL 2019655, at *6 (N.D.N.Y. Mar. 10, 2008) (". . . causing a prisoner to miss one religious service does not constitute a violation of RLUIPA.")
>
>As a result, Plaintiff has failed to sufficiently allege a viable RLUIPA claim. . . . Nevertheless, the Court finds that given Plaintiff's *pro se* status and the mandate to construe RLUIPA broadly, his RLUIPA claim for injunctive relief should not be dismissed with prejudice. Plaintiff should be granted another opportunity to properly state his RLUIPA claim.
>
>    FN 11: [Ta'anit] Esther, Passover Seder, Communion, and Tammuz.

*Recommendation* [#54] at 14-15 (emphasis added).

In his Order [#57] adopting the Recommendation, District Judge Brimmer noted that Plaintiff's Amended Complaint [#9] "failed to allege what role each of [the four services that Plaintiff was allegedly denied] play in the exercise of his religion of 'Judeo-Christianity' and how, if at all, his inability to attend them substantially burdened his ability to practice his religion." *Order* [#57] at 4-5. Judge Brimmer instructed Plaintiff that, in order to state a viable claim, he must allege "what it is about the particular service or services that is important to his free exercise of religion, such that being prevented from attending

-11-

constitutes a substantial burden on that right." *Id.* (citing *Abdulhaseeb*, 600 F.3d at 1316). Judge Brimmer agreed with this Court that "denial of attendance at four services in twenty months does not, standing alone, constitute a substantial burden" on Plaintiff's religious exercise. *Recommendation* [#54] at 12. He also noted that "there is [not] any threshold number of services that one must be prevented from attending to establish a substantial burden." *Order* [#57] at 5.

In the Second Amended Complaint, Plaintiff alleges that, in addition to the four services listed in the Amended Complaint [#9], he was also denied participation in Communion offered at CCF and CSP during 2010. *Second Amended Complaint* [#61] at 6. Plaintiff asserts that he has "not been able to adequately [and] properly practice [his] faith" because of this denial of participation. *Id.* In short, Plaintiff has still only alleged that he has been denied participation in four types of organized religious services over the course of twenty-three months.[3] *Id.* at 4-6. However, Plaintiff has now better explained that the denial of participation – at least with respect to Communion – is ongoing. It is not clear from Plaintiff's Second Amended Complaint how often Communion is offered to inmates in CDOC facilities. It is also not clear whether Plaintiff has actively requested to participate each time Communion is offered. Nevertheless, the Court liberally construes the Second Amended Complaint to allege a continuous and ongoing denial of participation in Communion. *See Response* [#72] at 5.

---

[3] Taken together, Plaintiff's Amended Complaint and Second Amended Complaint allege denial of participation in the following services: (1) Passover Seder on April 19-26, 2008; (2) Tammuz on July 20, 2008; (3) Ta'anit Esther on March 19, 2008; (4) Communion during 2009; and (5) Communion during 2010. *Amended Complaint* [#9] at 7; *Recommendation* [#54] at 3-4 & 14 n.11; *Second Amended Complaint* [#61] at 6.

Based on the totality of Plaintiff's allegations, the Court finds that Plaintiff has now plausibly stated the existence of a substantial burden on the exercise of his sincerely held religious beliefs. He has finally explained "what it is about [Communion, Ta'anit Esther, and the Passover Seder] that is important to his free exercise of religion, such that being prevented from attending constitutes a substantial burden on that right." *Order* [#57] at 4-5 (citing *Abdulhaseeb*, 600 F.3d at 1316). Plaintiff alleges that participation in Communion, Ta'anit Esther, and the Passover Seder is a "commandment," i.e., it is absolutely required by his religious beliefs. *Second Amended Complaint* [#61] at 2. When the government "'truly pressures [a prisoner] to . . . significantly violate his religious beliefs,'" it imposes a substantial burden on religious exercise. *Sossamon*, 560 F.3d at 332 (quoting *Adkins v. Kaspar*, 393 F.3d 559, 567 (5th Cir. 2004)). Here, Plaintiff has alleged that Defendants' refusal to allow him to participate in Communion, Ta'anit Esther, and the Passover Seder has caused him to violate a "commandment." *Second Amended Complaint* [#61] at 2. Plaintiff further alleges that his forced violation of a "commandment" is ongoing, i.e., he alleges that he will continue to be denied participation in Communion unless he is granted injunctive relief. *See id.* The Court therefore finds that Plaintiff has alleged the existence of a substantial burden on his religious exercise.

RLUIPA provides that a substantial burden on Plaintiff's religious exercise is permissible only if Defendants can show that the "imposition of the burden on [the Plaintiff] (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1(b)(1); *Abdulhaseeb*, 600 F.3d at 1312. Defendants assert that two interests are served by denying Plaintiff participation in Communion, Ta'anit Esther, and the Passover Seder.

*Motion* [#70] at 5.

First, Defendants argue that they have an interest in denying Plaintiff the option to participate in both Jewish and Christian services because doing so would provide him with "accommodations different from or better than those normally faced during incarceration." *Id.* at 5. This argument is unavailing. Despite Defendants' purported interest in fairness, RLUIPA does not permit prison officials to "administer the religious exercise of its inmate population based upon [their] assessment of the importance of the requested practice to the religious denomination professed by the inmate." *Amaker v. Goord*, No. 06-CV-490W(Sr.), 2007 WL 4560596, at *7 (W.D.N.Y Mar. 9, 2007) (unpublished decision). Therefore, Defendants' dislike of "accommodating individual religious beliefs which do not conform to the generally accepted practices of a recognized religious group" is not a compelling governmental interest. *Id.* (preventing inmates classified as part of the "Nation of Islam" from having dreadlocks because only those classified as "Rastifarian" were permitted to have the hairstyle imposed a substantial burden on the plaintiff's religious exercise). "Because it is not appropriate for [CDOC] to restrict [Plaintiff's] religious practice to those practices which conform to [CDOC's] interpretation" of religious beliefs, the Court finds that Defendants' first justification for prohibiting Plaintiff from participating in Communion, Ta'anit Esther, and the Passover Seder is insufficient. *Id.* at *8.

Defendants cite "security and management concerns" as their second justification for denying Plaintiff participation in Communion, Ta'anit Esther, and the Passover Seder. *Motion* [#70] at 5 n.1. The Court recognizes that prison safety and security are compelling governmental interests. *Cutter*, 544 U.S. at 725. However, in this case, prison officials have determined that permitting other inmates to participate in Communion, Ta'anit Esther,

and the Passover Seder "does not impose an insurmountable threat to [CDOC] security." *Amaker*, 2007 WL 4560596, at *7. Additionally, Defendants do not allege any facts that suggest that permitting Plaintiff to participate in Communion, Ta'anit Esther, or the Passover Seder would have an unusual impact on security. The Court therefore finds that Defendants' general security concerns do not justify the substantial burden placed on Plaintiff's religious exercise. *See id.*

The Court concludes that Defendants have not demonstrated a compelling governmental interest sufficient to justify the alleged substantial burden on Plaintiff's religious exercise. Accordingly, at this early phase of the litigation, and in light of the standard for considering a Rule 12(b)(6) motion, the Court finds that Plaintiff's case should proceed. The Court takes no position regarding whether Plaintiff will ultimately be able to carry his burden of persuasion.

### III. Conclusion

For the foregoing reasons, the Court respectfully **RECOMMENDS** that Defendants' **Motion to Dismiss** [#70] be **DENIED**.

IT IS HEREBY **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen (14) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. A party's failure to serve and file specific, written objections waives de novo review of the Recommendation by the District Judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v.*

*Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996). A party's objections to this Recommendation must be both timely and specific to preserve an issue for de novo review by the District Court or for appellate review. *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

    Dated: March 15, 2011

                                          BY THE COURT:

                                          __s/ Kristen L. Mix_____
                                          United States Magistrate Judge