IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 09-cv-01676-PAB-KLM

FRANK VIGIL, JR.,

      Plaintiff,

v.

COLORADO DEPARTMENT OF CORRECTIONS,

      Defendant.

_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on Defendant's **Motion for Summary Judgment on Amended Complaint (Doc. 61)** [Docket No. 89; Filed July 1, 2011] (the "Motion"). Plaintiff, who is proceeding *pro se*, filed a Response [#93] in opposition to the Motion on July 20, 2011. Defendant filed a Reply [#94] on August 5, 2011. Pursuant to 28 U.S.C. § 636(b)(1)(A) and D.C.COLO.LCivR 72.1C.3., the Motion has been referred to this Court for a recommendation regarding disposition. The Court has reviewed the Motion, Plaintiff's Response, Defendant's Reply, the entire case file, and the applicable law and is sufficiently advised in the premises. For the reasons set forth below, the Court respectfully **RECOMMENDS** that the Motion be **DENIED**.

## I. Summary of the Case

Plaintiff is an inmate at the Colorado Department of Corrections ("CDOC" or "Defendant") facility identified as Colorado State Penitentiary ("CSP"). In short, Plaintiff

-1-

alleges in his Second Amended Complaint that "he is an adherent of a faith he labels 'Judeo-Christianity.'"[1]  Plaintiff alleges that Defendant has violated the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. §§ 2000cc to 2000cc-5 ("RLUIPA") by denying him participation in certain religious services offered in CDOC prisons.[2]  *2nd Am. Compl.* [#61] at 1.  He asserts that participation in these services is required by his religious beliefs. *See id.*  Plaintiff seeks permanent injunctive relief in the form of an order directing Defendant to recognize Judaeo-Christianity as a religion.  *Id.* at 6.  As a practical matter, Plaintiff also seeks an order directing Defendant to allow him to participate in Communion and two other services (observances of Ta'anit Esther and the Passover Seder or "The Feast of Unleavened Bread") held at CSP, where he is now incarcerated.  *See id.*

According to the evidence presented by the parties in connection with the Motion, on March 2, 1998, Plaintiff's religious affiliation was listed as Protestant[3] by CDOC.  *See Ex. A-1, Aff. of Proffit* [#89-1] at 40 (Attach. 8, Memo. from McCormick to Pl., dated Mar.

---

[1]  The parties use alternate spellings of "Judaeo" and "Judeo" throughout the filings, each of which appears to be an acceptable spelling of the same word.  *See, e.g.*, *Van Orden v. Perry*, 545 U.S. 677, 688 n.8 (2005) ("Judeo"); *Harris v. McRae*, 448 U.S. 297, 319 (1980) ("Judaeo").  For the sake of consistency, the Court uses "Judaeo" throughout this Recommendation, except when quoting one of the parties, as necessary.

[2]  As the Court has previously noted, *Recommendation of United States Magistrate Judge* [#73] at 5 n.1, Plaintiff's Second Amended Complaint [#61] does not specify which sections of RLUIPA Defendants allegedly violated.  After reviewing the Second Amended Complaint, the Court found that Plaintiff intended to allege violations of 42 U.S.C. §§ 2000cc-2000cc-5.  *See Castro v. United States*, 540 U.S. 375, 381 (2003) (noting that the Court may recharacterize the claims of a *pro se* plaintiff so as to "create a better correspondence between the substance of [the claims] and [their] underlying legal basis").

[3]  CDOC's official overview of recognized faith groups provides that those offenders listed as having this religious affiliation may request a vegetarian or vegan diet and may observe the holy days of Good Friday, Palm Sunday, Easter, and Christmas.  *Ex. A-1, Aff. of Proffit* [#89-1] at 26 (Attach. 1, CDOC Admin. Reg. No. 800-01).

7, 2008).  Almost ten years later, on January 22, 2008, Plaintiff wrote a letter to CDOC

staff,[4] apparently in response to a notice he had received that day telling him that he had

been designated as a member of the Protestant faith group.[5]  *See Response* [#93] at 7 (Ex.

2, Plaintiff's Jan. 22, 2008 letter).  In that letter, Plaintiff denied ever requesting designation

as a Protestant, stating that he had submitted a form in November 2007 requesting that he

be designated as a Judaeo-Christian as well as a second form in December 2007

requesting a kosher diet.  *See id.*  Plaintiff briefly described his religious beliefs as follows:

> Judaeo-Christianity is the one and only true faith.  I am not of the bloodline
> of Abraham, Isaac and Jacob who is Israel, so therefore, I am NOT a Jew
> which believes the Messiah (CHRIST) is yet to come or a Messianic Jew
> which believes the Messiah (CHRIST) already came as Jesus of Nazareth.
> I am a Gentile, which believes the Lord God (YAHWEH) is creator and
> sustainer of every one and thing.  I believe Jesus is Christ; I believe in the
> Holy Ghost at Pentecost.  I believe the Bible (Old/New Testaments) is the
> Law of God, and in accordance to that Law (LEVITICUS).

*Id.*  Plaintiff ended his letter requesting that his faith group designation be changed to

Judaeo-Christian and that he be permitted to receive a kosher diet.  *See id.*

On January 30, 2008, Plaintiff filed with CDOC a form titled "Establishing Faith

Group Practices."  *Ex. A-1, Aff. of Proffit* [#89-1] at 32-33 (Attach. 2, CDOC "Establishing

Faith Group Practices" Form, dated Jan 29, 2008).  Therein, he requested that CDOC

recognize his religious faith, Judaeo-Christianity.  *Id.* at 32.  He also stated that,

"Christianity-Judaeo is for Gentiles and equivalent to Messianic Judaism, which is for

Jews."  *Id.* at 32.  He listed the tenets, teachings, and requirements of his faith as

consisting of "the whole Bible, Old & New Testiments [sic]," the same dietary laws required

---

[4] The precise recipient (or recipients) of the letter is unclear.

[5] No explanation of any nature is provided for the period between 1998 and 2008.

by Judaism, and "everything Christianity (Protestant/Evangelical) and Judaism call for and allow in the Bible" with respect to holy days and worship practices, property, and apparel. *Id.* at 32-33.   He was unable to provide CDOC with the name of a governing body or documentation confirming the existence of his proposed faith group; he merely stated, "I'm sure there is some kind of governing body somewhere in the world, I don't know of it however."  Id. at 32.

Also on January 30, 2008, Plaintiff filed a CDOC form titled "Request for Change of Group Affiliation," requesting that his affiliation be changed to Messianic Judaism.[6]  *Ex. A-1, Aff. of Proffit* [#89-1] at 41 (Attach. 9, CDOC "Request for Change of Faith Group Affiliation," approved Mar. 24, 2008).   On the back of this form, Plaintiff elaborated that his religious affiliation had been listed as Christianity[7] but that, in November 2007, he requested that it be changed to Judaeo-Christianity.  *Id.*  He protested his designation as Protestant because, he averred, his designation request should have been denied if Judaeo-Christianity was not on CDOC's list of religious affiliations.  *Id.*  In addition, since he never requested to be designated as Protestant, he protested CDOC's regulation

---

[6]  CDOC's official overview of recognized faith groups outlines that those offenders listed as having this religious affiliation may request a Kosher diet and participate in the fast days of Tevet, Ester, Tammuz, Tish B'Av, Gedeliah, and Yom Kippur. *Ex. A-1, Aff. of Proffit* [#89-1] at 25 (Attach. 1, CDOC Admin. Reg. No. 800-01).  Further, such a person may observe the holy days of Chanukah and the work proscription days of Shabbot (weekly); Purim; the first, second, seventh and eighth days of Passover; the first and second days of Shavout; Fast of 9th of Av; the first and second days of Rosh Hashanah; Yom Kippur; the first and second days of Sukkot; Shemini Atzeret; and Simchat Torah.  *Id.*  The diet, fast days, holy days, and work proscription days are identical to those listed under the "Jewish" faith group.  *Cf. Ex. A-1, Aff. of Proffit* [#89-1] at 24 (Attach. 1, CDOC Admin. Reg. No. 800-01).

[7]  CDOC asserts that Plaintiff's religious affiliation was listed as Protestant starting in 1998. *Ex. A-1, Aff. of Proffit* [#89-1] at 40 (Attach. 8, Memo. from McCormick to Pl., dated Mar. 7, 2008). CDOC's official overview of recognized faith groups lists this designation as "Protestant (General Christian)."  *Ex. A-1, Aff. of Proffit* [#89-1] at 26 (Attach. 1, CDOC Admin. Reg. No. 800-01).

requiring that he wait a full year before he could again change his religious affiliation. *Id.* He also reiterated that "Judaeo-Christianity is for Gentiles as Messianic Judaism is for Jews, and is categorized under Messianic Judaism but because [CDOC's] books don't have that differentiator I request to be registered Messianic Judaism, being a Gentile and not a Jew, so therefore being Judaeo-Christian." *Id.*

On March 4, 2008, Plaintiff requested a Kosher diet. *See Ex. A-1, Aff. of Proffit* [#89-1] at 45 (Attach. 12, CDOC "Request for Religious Diet" Form, dated Mar. 4, 2008). At that time, he also signed and submitted a CDOC form titled "Religious Diet Participation Agreement," by which he agreed to abide by certain conditions, such as agreeing to only purchase, possess, or consume food items on his diet. *See id.* at 46. The next day, he requested to participate in the "Fast of Ester (Purim)," and on March 6, 2008, he requested to participate in "Passover Seders (Pesah)." *See Ex. A-1, Aff. of Proffit* [#89-1] at 39 (Attach. 7, CDOC Correspondence, dated Mar. 5, 6, & 7, 2008).

On March 7, 2008, Plaintiff was notified by M.N. McCormick ("McCormick"), HSM Volunteer Supervisor, that Plaintiff's requests to participate in the upcoming Jewish holidays of Purim and Pesah were denied, because his religious affiliation would remain listed as Protestant until receipt of the approved request form changing Plaintiff's affiliation, which would take approximately three-to-four weeks to process. *Ex. A-1, Aff. of Proffit* [#89-1] at 40 (Attach. 8, Memo. from McCormick to Pl., dated Mar. 7, 2008). On March 11, 2008, Plaintiff filed a CDOC Offender Step I Grievance Form ("Grievance Form") in connection with this denial.[8] *See id.* at 17 (Ex. 16, Plaintiff's Mar. 11, 2008 Grievance

---

[8] Defendant provides a three-step grievance process for its inmates. *See generally A-4.* First, inmates must attempt to resolve the issue/complaint by filing a Step 1 grievance form. *See*

Form).

On March 24, 2008, Plaintiff's January 20, 2008 request to have his religious affiliation changed to Messianic Judaism was approved.  *Ex. A-1, Aff. of Proffit* [#89-1] at 41 (Attach. 9, CDOC "Request for Change of Faith Group Affiliation," approved Mar. 24, 2008).  Because of his new affiliation, Plaintiff was therefore permitted "to participate in the holy days, ceremonies and rituals of Jewish offenders, as long as he is timely in his requests and meets the necessary criteria."  *Ex. A-5, Aff. of Proffit* [#94-1] at 6.  About a month later, on or about April 28, 2008, Plaintiff's request for a Kosher diet was approved. *See Ex. A-1, Aff. of Proffit* [#89-1] at 45 (Attach. 12, CDOC "Request for Religious Diet" Form, dated Mar. 4, 2008).

On May 9, 2008, Darryl Proffit ("Proffit"), Regional Coordinator for the Faith and Citizens Programs at CDOC, responded to a request by Plaintiff to recognize Judaeo-Christianity as a faith group via Plaintiff's submission of the CDOC form titled "Establishing Faith Group Practices."  *See Ex. A-1, Aff. of Proffit* [#89-1] at 34 (Attach. 3, Correspondence from Proffit to Pl., dated May 9, 2008).  Therein, Proffit informed Plaintiff that he had not fulfilled the prerequisite of listing an address for a governing body for the requested faith group, advised Plaintiff that the tenets he had listed for Judaeo-Christianity were similar to those for Messianic Judaism, and thus denied Plaintiff's request.  *See id.*

On an unspecified date soon thereafter, Plaintiff filed another "Establishing Faith Group Practices" form.  *See Ex. A-1, Aff. of Proffit* [#89-1] at 35 (Attach. 4, CDOC

---

*Aff. of Decesaro* [#89-3] at 1.  Second, if unsatisfied with the result of the Step 1 grievance, the inmate must then file a Step 2 grievance form.  *See id.*  If still unsatisfied by the Step 2 grievance result, the inmate must file a Step 3 grievance.  *See id.*  Once the inmate receives a response to his Step 3 grievance, he has exhausted his administrative remedies.  *See id.* at 2.

"Establishing Faith Group Practices" Form, undated).   Plaintiff attempted to clarify his original request by stating that his religion was "both Judaism and Christianity, not just one or the other."   *Id.* at 35.   He again failed to list the name of a governing body or provide documentation confirming the existence of his faith group; rather, he stated, "I've tried to obtain information, but, have been unable to get it."   *Id.* at 35.

On June 27, 2008, Proffit responded to Plaintiff's undated "Establishing Faith Group Practices" form submission.   *See Ex. A-1, Aff. of Proffit* [#89-1] at 37 (Attach. 5, Correspondence from Proffit to Pl., CDOC "Request for Religious Diet" Form, dated Mar. 4, 2008).   He again informed Plaintiff that he was required to provide CDOC with the name of a group or governing body related to Plaintiff's requested religion.   *See id.*   This time, Proffit independently performed an internet search, but he was unable to discover information supporting the existence of a Judaeo-Christianity faith group.   *See Aff. of Proffit* [#94-1] at 5.   Lacking this information, Plaintiff's request was again denied.   *See Ex. A-1, Aff. of Proffit* [#89-1] at 37 (Attach. 5, Correspondence from Proffit to Pl., CDOC "Request for Religious Diet" Form, dated Mar. 4, 2008).   Plaintiff was also again informed that the beliefs he outlined in his submission were similar to those of the Messianic Judaism faith group.   *See id.*

On June 29, 2008, Plaintiff submitted a CDOC form titled "Religious Diet Cancellation Request."   *See Ex. A-1, Aff. of Proffit* [#89-1] at 47 (Attach. 13, "Religious Diet Cancellation Request," dated June 29, 2008).   Therein, he stated:

> As a result of the discriminatory-anti-semetic [sic] feeding practices against those on a KOSHER diet (which I raised in a Grievance committed by [sic] [CDOC's] food service department[)], I have to cancel my KOSHER diet for a regular diet.   The five (5) years in C.S.P. on a regular diet caused me to lose 30 pounds, the two (2) months I've been on a KOSHER diet, I'm 10

> pounds under the 30 pounds I had already lost. [CDOC] needs to correct the discriminatory feeding practices against those on a KOSHER diet.  I don't want to quit the KOSHER diet, but, I have no choice.  I understand [CDOC's] position of having a one (1) year period, but I don't agree with it, especially if the discriminatory practices are correct [sic] with-in that one (1) year period.

*Id.* There is a notation in different handwriting on the form indicating that Plaintiff's Kosher diet was cancelled on July 3, 2008.  *See id.*

On July 14, 2008, Proffit was forwarded a letter from Plaintiff in which Plaintiff stated that he tried to obtain contact information for a Judaeo-Christianity faith group in the General Library and that he found a book covering Judaeo-Christianity.  *See Ex. A-1, Aff. of Proffit* [#89-1] at 38 (Attach. 6, Correspondence from Pl. to Proffit, dated July 14, 2008). Proffit attempted to find the book online and at the Montrose Public Library based on the information provided by Plaintiff, but he could not find the book Plaintiff was referencing. *See Aff. of Proffit* [Docket #94-1] at 5.

On July 19, 2008, Plaintiff requested an interview with the Facility Volunteer Coordinator, asking "What is [CDOC] and it[]s Staff's problem?  Why was I not allowed to participate in Tammuz?"  *See Ex. A-1, Aff. of Proffit* [#89-1] at 43 (Attach. 10, Correspondence Between Pl. and the Chaplain, dated July 19 & 23, 2008).   The Jewish observance of Tammuz occurred the next day, on July 20, 2008.  *See Ex. A-5, Aff. of Proffit* [#94-1] at 6.  On July 23, 2008, the Chaplain's Office responded, first expressing its apology for Plaintiff having missed Tammuz.[9]  *See Ex. A-1, Aff. of Proffit* [#89-1] at 43 (Attach. 10, Correspondence Between Plaintiff and the Chaplain, dated July 19 & 23, 2008CDOC "Request for Religious Diet" Form, dated Mar. 4, 2008).

--------

[9]  The rest of the response is obscured in the copy provided to the court.

-8-

On August 4, 2008, Susan Jones ("Jones"), CCF/CSP Warden, also responded to Plaintiff's Tammuz message from July 19, 2008. *See Ex. A-1, Aff. of Proffit* [#89-1] at 44 (Attach. 11, Memo. from Jones to Pl., dated Aug. 4, 2008). She informed Plaintiff that the deadline to sign up to participate in that fast was July 9, 2008, because "[i]t is necessary to make arrangements in advance in order to meet the dietary requirements for those who participate." *Id.* She further informed Plaintiff that the "information was posted in advance of the deadline, via the facility character generator, to allow sufficient time for you to submit your request to participate." *Id.* She said that, based on the information before her, Plaintiff was denied participation in Tammuz because he failed to make the request in time,[10] not because CDOC had otherwise prevented him from participating. *See id.* Finally, she confirmed that Plaintiff was listed to participate in the upcoming Jewish observance of the 9th of Av. *See id.*

On December 21, 2008, Plaintiff requested special dietary provisions in connection with his participation in the upcoming Jewish observance of the 10th of Tevet. *See Ex. A-1, Aff. of Proffit* [#89-1] at 48 (Attach. 14, "Request for Interview" from Pl., dated Dec. 21, 2008). Therein, he asserted that, as a Judaeo-Christian, he did not have to observe a Kosher diet but could, instead, follow a regular diet. *Id.* He was, therefore, only requesting Kosher meals for the length of the observance. *Id.*

On December 29, 2008, the Central Food Service Administration Office of CDOC responded to Plaintiff's latest dietary request. *See Ex. A-1, Aff. of Proffit* [#89-1] at 49

---

[10] Jones states that Plaintiff's request was not received until July 23, 2008, three days after the July 20, 2008 observance of Tammuz. *See Ex. A-1, Aff. of Proffit* [#89-1] at 44 (Attach. 11, Memo. from Jones to Pl., dated Aug. 4, 2008).

(Attach. 15, Correspondence from CDOC to Pl., dated Dec. 29, 2008).   Plaintiff was informed that, although he had the option to observe Messianic Jewish holy days, special provisions would not be made for him for the sole reason that he was not otherwise receiving a Kosher diet.  *See id.*  Plaintiff was further informed that, assuming he had timely signed up for the observance, he would be provided with the same standard food items as others who were observing the holy day.  *See id.*

On November 27, 2009, Plaintiff requested to participate in Communion for March 30, 2010.  *See Response* [#93] at 25 (Ex. 23, "Request for Interview" from Plaintiff, dated Nov. 27, 2009).  On December 8, 2009, Plaintiff's request was denied on the basis that he was then affiliated with the Messianic Jewish faith group, and that Communion service was not authorized or recognized for that faith group.  *See id.* at 25 (Ex. 24, Correspondence from McCormick to Plaintiff, dated Dec. 8, 2009).  Plaintiff had already successfully signed up for the Passover Observance in March 2010.  *See id.*  Defendant states that it has no record of Plaintiff having filed a Step III Grievance Form with respect to "his alleged inability to participate in communion during 2009, 2010 or 2011."  *See Ex. A-3, Aff. of DeCesaro* [#89-3] at 2.

## II.  Standard of Review

The purpose of a motion for summary judgment pursuant to Fed. R. Civ. P. 56 is to assess whether trial is necessary.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Under Fed. R. Civ. P. 56(c), summary judgment shall be granted if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  An issue is genuine if the evidence is such that a reasonable jury could resolve the issue

in favor of the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 277 U.S. 242, 248 (1986). A fact is material if it might affect the outcome of the case under the governing substantive law.  *Id.*

The burden is on the movant to show the absence of a genuine issue of material fact.  *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670-71 (10th Cir. 1998) (citing *Celotex*, 477 U.S. at 323).  When the movant does not bear the ultimate burden of persuasion at trial, the "movant may make its prima facie demonstration [of the absence of a genuine issue of material fact] simply by pointing out to the [C]ourt a lack of evidence for the nonmovant on an essential element of the nonmovant's claim."  *Id.* at 671.  If the movant carries the initial burden of making a prima facie showing of a lack of evidence, the burden shifts to the nonmovant to put forth sufficient evidence for each essential element of his claim such that a reasonable jury could find in his favor.  *See Anderson*, 277 U.S. at 248; *Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir. 1999).  The nonmovant must go beyond the allegations and denials of his pleadings and provide admissible evidence, which the Court views in the light most favorable to him.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Panis v. Mission Hills Bank, N.A.*, 60 F.3d 1486, 1490 (10th Cir. 1995) (citing *Celotex*, 477 U.S. at 324). Conclusory statements based merely on conjecture, speculation, or subjective belief are not competent summary judgment evidence.  *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).  The nonmoving party's evidence must be more than "mere reargument of [his] case or a denial of an opponent's allegation" or it will be disregarded. *See* 10B Charles Alan Wright, et al., Federal Practice and Procedure § 2738 at 356 (3d ed.1998).

When considering Plaintiff's Response [#93] and other filings, the Court is mindful that it must construe the filings of a *pro se* litigant liberally.  *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  However, the Court should not be a *pro se* litigant's advocate, nor should it "supply additional factual allegations to round out [a *pro se* litigant's] complaint or construct a legal theory on [his] behalf."  *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citing *Hall*, 935 F.2d at 1110).  In addition, *pro se* litigants must follow the same procedural rules that govern other litigants.  *Nielson v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994).

### III.  Analysis

Defendant moves for summary judgment on Plaintiff's RLUIPA claim.  *See Motion* [#89].  Defendant makes two arguments.  *See id.* at 8-14.  First, it asserts that Plaintiff's claim alleging denial of participation in Communion should be dismissed because Plaintiff failed to exhaust his administrative remedies on that issue.  *See id.* at 12-14.  Second, Defendant asserts that the remainder of Plaintiff's RLUIPA claim should be dismissed as a matter of law because Plaintiff has not shown that the religious exercises in which he wishes to engage are motivated by a sincerely-held belief and because Plaintiff has not shown that such beliefs are being substantially burdened by the government.  *See id.* at 8-12.

### A.    Exhaustion of Administrative Remedies

As an affirmative defense to Plaintiff's claim alleging denial of participation in Communion, Defendant avers that Plaintiff failed to exhaust his administrative remedies with respect to this one type of observance.  *See id.* at 12-14; *see also Jones v. Bock*, 549

U.S. 199, 216 (2007) ("[F]ailure to exhaust is an affirmative defense under the [Prison Litigation Reform Act].").

The Prison Litigation Reform Act ("PLRA") mandates that, "No action shall be brought with respect to prison conditions under . . . any . . . Federal law[ ] by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Defendant mandates a three-step grievance process for its inmates. *See Affidavit of Anthony Decesaro* [#89-3] at 1. First, inmates must attempt to resolve the issue/complaint by filing a Step 1 grievance form. *See id.* Second, if unsatisfied with the result of the Step 1 grievance, the inmate must then file a Step 2 grievance form. *See id.* If still unsatisfied with the Step 2 grievance result, the inmate must file a Step 3 grievance. *See id.* Once the inmate receives a response to his Step 3 grievance, he has exhausted his administrative remedies. *See id.* at 2.

Here, Defendant has submitted evidence that Plaintiff failed to file a Step 3 grievance form with respect to his allegations that he was prevented from participating in Communion. *See id.* Plaintiff has not provided evidence to the contrary. Rather, his only evidence consists of a request to participate in Communion and Defendant's response that there was no Communion service authorized or recognized for the Messianic faith group with which Plaintiff was then affiliated. *See Response* [#93] at 25 (Ex. 23, Pl.'s Nov. 27, 2009, Request for Interview; Ex. 24 Def.'s Dec. 8, 2009, Response to Pl.'s Communion Request). Thus, Plaintiff has not provided evidence that he filed a Step 3 grievance form with respect to the Communion issue. Accordingly, there is no genuine issue of material fact with respect to whether Plaintiff fully complied with the grievance process regarding Defendant's allegedly preventing him from participating in Communion.

However, the Court notes that the relief requested by Plaintiff does not turn on whether his administrative remedies with respect to Communion were exhausted. Plaintiff generally seeks recognition of "Judeo-Christianity" as a faith group within CDOC and permission to participate in the accompanying Jewish and Christian practices, which include Communion. Thus, Plaintiff's failure to follow the grievance process with respect to one particular, recognized practice within the Christian faith does not preclude any portion of his RLUIPA claim from moving forward. *See Booth v. Churner*, 532 U.S. 731, 739 (2001) ("[O]ne 'exhausts' processes, not forms of relief."). Defendant's argument that Plaintiff's failure to exhaust regarding his request for Communion bars his RLUIPA claim lacks merit.

## B.    RLUIPA

RLUIPA provides that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability," unless the government demonstrates that the burden furthers a "compelling governmental interest," and does so by "the least restrictive means." 42 U.S.C. § 2000cc-1(a)(1)-(2). "RLUIPA thus protects institutionalized persons who are unable freely to attend to their religious needs and are therefore dependent on the government's permission and accommodation for exercise of their religion." *Cutter v. Wilkinson*, 544 U.S. 709, 721 (2005). The Court must construe RLUIPA "in favor of a broad protection of religious exercise, to the maximum extent permitted by the terms of [the statute] and the Constitution." 42 U.S.C. § 2000cc-3(g). Therefore, it must be mindful that the "'exercise of religion' often involves not only belief and profession but the performance

of . . . physical acts [such as] assembling with others for a worship service [or] participating in sacramental use of bread and wine." *Cutter*, 544 U.S. at 721 (quoting *Employment Div. Dep't of Human Res. of Ore. v. Smith*, 494 U.S. 872, 877 (1990)); 42 U.S.C. § 2000cc-5(7)(A) ("religious exercise" includes "any exercise of religion**,** whether or not compelled by, or central to, a system of religious belief").

A plaintiff bears the initial burden of establishing "the prima facie existence" of a substantial burden on his religious exercise. *Warsoldier v. Woodford*, 418 F.3d 989, 995 (9th Cir. 2005).  To survive a motion for summary judgment, a plaintiff must provide evidence of the following three elements: (1) that the plaintiff wishes to engage in a religious exercise; (2) that this wish is motivated by a sincerely-held belief; and (3) that the exercise is subject to a substantial burden imposed by the government. *See Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1312 (10th Cir. 2010).

Because RLUIPA requires a state government to affirmatively permit and accommodate religious exercise by incarcerated persons, the government's burden when defending against a prisoner's RLUIPA claim is more onerous than its burden when defending against a prisoner's constitutional claim. *See Jotunbane v. Sedillo*, No. CIV 06-809 JB/RHS, 2010 WL 1781922, at *5 (D.N.M. Apr. 20, 2010) (unpublished decision). Therefore, a prisoner plaintiff should, in theory, survive motions to dismiss and motions for summary judgment significantly more often when proceeding under RLUIPA. *Id.; see, e.g.*, *Abdulhaseeb*, 600 F.3d at 1316-17 (finding that a prisoner presented a genuine issue of material fact as to whether the denial of his requests for an Islamic diet burdened his religious exercise); *Rowe v. Davis*, 373 F. Supp. 2d 822, 827 (N.D. Ind. 2005) (finding that a prisoner's complaint that a prison official prevented him from meeting with a religious

leader was sufficient to survive a Fed. R. Civ. P. 12(b)(6) motion to dismiss).

Defendant does not contest the first element of Plaintiff's RLUIPA claim, that he wishes to engage in religious exercises.  However, Defendant avers that Plaintiff cannot meet the second two elements, i.e., that his wish is motivated by a sincerely-held belief and that his religious exercise is subject to a substantial burden imposed by the government. *See Motion* [#89] at 8-12.

### 1.    Sincerely-Held Belief

First, the court must determine if there is a genuine issue of material fact with respect to whether Plaintiff's religious exercise is motivated by a sincerely-held belief.  "In assessing this burden, courts must not judge the significance of the particular belief or practice in question.  RLUIPA bars inquiry into whether [the] belief or practice is 'central' to a prisoner's religion.  RLUIPA does not, however, preclude inquiry into the sincerity of a prisoner's professed religiosity."  *Abdulhasseb v. Calbone*, 600 F.3d at 1314 n.6 (citing *Lovelace v. Lee*, 472 F.3d 174, 187 (4th Cir. 2006) (quotations and citations omitted)).

In this case, as the Court has previously noted, *Recommendation of United States Magistrate Judge* [#73] at 8, because prison religious observances may offer some relief from the regular conditions of prison life (e.g., confinement to a cell, limitations on food, beverages and reading material, limitations on opportunities to socialize, etc.) and may create difficulties in maintaining safety and order within the prison, CDOC's interest in closely supervising inmates' religious practices is manifest.  Moreover, RLUIPA's requirement that a plaintiff demonstrate sincerely-held beliefs mandates Court scrutiny of the precise allegations made by a prisoner about his religion, especially when the prisoner is professing belief in something other than a traditionally recognized religion.  Although

Judaeo-Christian principles have long been identified, explored and observed in various forms of the Protestant, Catholic and Jewish faiths, a form which combines Judaism and Christianity is not widely recognized.

As the Court has already discussed, Plaintiff professes a believe that a combination of certain Jewish and Christian observances are important to the practice of his religious beliefs. Plaintiff avers that Messianic Jews and Judaeo-Christians believe the same things. *See Response* [#93] at 4.   Plaintiff asserts, however, that Messianic Jews are "Jew/Hebrew" and that Judaeo-Christians are Gentile. *See id.*  Plaintiff disputed CDOC's designation of his beliefs as Messianic Judaism because, as listed by CDOC, such faith group did not include any tenets/practices of Christianity. *See Response* [#93] at 7 (Ex. 2, Plaintiff's Jan. 22, 2008 letter).

Plaintiff states that he "believes the Lord God (YAHWEH) is creator and sustainer of every one and thing.  I believe Jesus is the Christ; I believe in the Holy Ghost at Pentecost.  I believe the Bible (Old/New Testaments) is the Law of God, and in accordance to that Law (LEVITICUS)." *Response* [#93] at 7 (Ex. 2, Plaintiff's Jan. 22, 2008 letter). Plaintiff avers that he attempted to follow a Kosher diet until he dramatically started losing weight. *See Ex. A-1, Aff. of Proffit* [#89-1] at 45-47 (Attach. 12, CDOC "Request for Religious Diet" Form, dated Mar. 4, 2008; Attach. 13, "Religious Diet Cancellation Request," dated June 29, 2008).  Plaintiff provides evidence that he has attempted to participate in many of the observances permitted by CDOC, and that he was sometimes permitted to participate and at other times not permitted to participate because of his faith-group designation or because he failed to follow CDOC's internal procedures for requesting participation in such observances. *See, e.g.*, *Ex. A-1, Aff. of Proffit* [#89-1] at 4-7.

-17-

Defendant specifically attacks the sincerity of Plaintiff's beliefs in two ways.  First, it avers that Plaintiff is merely trying to combine two religions into one so as to enjoy the benefits of each.  *See Motion* [#89] at 9.  Second, Defendant points to Plaintiff's request to be removed from a Kosher diet as evidence of the insincerity of his beliefs.  *See id.*

With respect to its first point, Defendant notes Plaintiff's statement that his religion is "both Judaism and Christianity, not just one or the other."  *Aff. of Proffit* [#89-1] at 35 (Attach. 4, AR Form 800-01H, undated).   However, Defendant's argument that "Judeo-Christianity" is not a religion, when evaluating the sincerity of Plaintiff's belief, is inapposite. "The relevant inquiry is not what others regard as an important religious practice but what the plaintiff believes."  *Levie v. Ward*, No. CIV-05-1419-HE, 2007 WL 2840388, at *14 (W.D. Okla. Sept. 27, 2007) (citing *Cutter v. Wilkinson*, 544 U.S. 709, 714 (2005)).  In other words, "it matters not whether the inmate's religious belief is shared by ten or tens of millions.  All that matters is whether the inmate is sincere in his or her own views." *Levie*, 2007 WL 2840388, at *14 (quoting *Williams v. Bitner*, 359 F. Supp. 2d 370, 376 (M.D. Pa. 2005)).

Plaintiff avers that Messianic Jews and Judaeo-Christians believe the same things. *See Response* [#93] at 4.  Although he asserts that adherents to these religions are not the same, the only difference he cites is that Messianic Jews are "Jew/Hebrew" and that Judaeo-Christians are Gentile.  *See id.*  Although Judaeo-Christianity as a faith has not been discussed by other federal courts, Messianic Judaism has been examined.  For example, in *Montano v. Hedgepeth*, 120 F.3d 844, 846 (8th Cir. 1997), the plaintiff inmate practiced Messianic Judaism, although he was not Jewish by birth or conversion.  He asserted that he was "a Christian who studies from a Jewish perspective."  *Id.*  His theology

-18-

borrowed elements from both Protestant Christianity and from Judaism.  *See id.*  More specifically, he embraced "many of the fundamental tenets commonly associated with the Christian faith, such as the divinity of Christ, but he also [found] it important to observe traditional Jewish holidays and festivals like Rosh Hashana."  *Id.*  At the time of the dispute, only two inmates at his prison regularly practiced Messianic Judaism.  *See id.* at 846 n.2. In another case, *Perez v. I.N.S.*, 96 F.3d 390, 391 (9th Cir. 1996), the plaintiffs, who were to be deported to Israel, asserted that Messianic Judaism "posits that Jesus Christ was indeed the Messiah of whom the Old Testament foretold."  In *Rowan v. Tucker*, 4:10-cv-429-MP-GRJ, 2011 WL 4551479, at *1 (N.D. Fla. Sept. 28, 2011), the plaintiff inmate, who also brought suit pursuant to RLUIPA due to the prison's denial of permission to attend both Jewish- and Christian-based observances, described his faith of Messianic Judaism as "a sect of Judaism that accepts Jesus Christ as the promised Messiah of the Old Testament of the Bible and also recognizes the New Testament as the inspired, infallible word of God."

Simply because a prisoner's professed religious beliefs are a blending of two widely-accepted religions does not preclude that prisoner's beliefs from being protected under RLUIPA.  *See generally, e.g.*, *Kikumura v. Hurley*, 242 F. 3d 950 (10th Cir. 2001) (discussing claims of prisoner who practiced a mixture of Buddhist and Christian religions). In other words, although the existence of an outside governing body for a prisoner's belief system may allow CDOC "to confirm the faith group's existence, ceremonies, practices and rituals," the lack of one does not preclude the Court from finding that the prisoner is sincere in his beliefs.

With respect to its second point, Defendant asserts that Plaintiff's request to be removed from a Kosher diet is evidence of the insincerity of his beliefs.  On April 28, 2008,

Plaintiff's request for a kosher diet was approved by CDOC.  *See Ex. A-1, Aff. of Proffit* [#89-1] at 45 (Attach. 12, CDOC "Request for Religious Diet" Form, dated Mar. 4, 2008). Approximately two months later, on June 29, 2008, Plaintiff requested removal from the kosher diet.  *See Ex. A-1, Aff. of Proffit* [#89-1] at 47 (Attach. 13, "Religious Diet Cancellation Request," dated June 29, 2008).  He stated, "I don't want to quit the kosher diet, but I have no choice."  *Id.*  In support, he averred that he had lost ten pounds in two months on a kosher diet, while he had lost just thirty pounds in the previous five years on a regular diet at CDOC.  *Id.*  Although Defendant claims that this is evidence of his insincerity, the Court finds that Plaintiff has offered an explanation for his actions, thus creating a fact issue on this point.  *See also DeRosa v. Jones*, No. CIV-05-324-FHS, 2007 WL 2071864, at *3 (E.D. Okla. July 16, 2007) (noting assertion by the plaintiff inmate that those practicing Messianic Judaism are "not concerned with the separation of meat and dairy, maintaining separate dishes for certain meals/food items or having a rabbinic blessing said over the food," but, rather, "are concerned with the proper slaughter in which the blood is drained from the carcass and during preparation not mixing food with nonfood items such as pork and many seafood products").

Plaintiff's evidence on this element of his RLUIPA claim is thin, and barely assuages the Court's "ample doubts about whether [he] is motivated by a sincerely-held religious belief."  *Recommendation* [#54] at 12.  More specifically, the Court is troubled by the implication that a prisoner could create a self-serving set of beliefs, diligently attempt to adhere to them, and sue the prison which declines to permit him to do so for a violation of RLUIPA.  Indeed, without a legal requirement that a prisoner's religious beliefs must be sanctioned by an outside governing body, the scope of religious affiliations for which

prisoners might seek recognition is limited only by their imaginations.  Without such a requirement, nothing prevents a prisoner from seeking recognition of a  "religion" requiring consumption of certain desirable foods, or requiring access to the outdoors or to entertainment, or requiring social interaction with the opposite sex.  More to the point, nothing prevents a prisoner from combining all faith-based systems into one "religion" and requesting access to the ceremonies, diets, holy days and faith items permitted by all. Surely RLUIPA was not intended to, and cannot, allow protection for "religions" that are based primarily on a desire to eliminate or significantly reduce the ordinary discomforts and restrictions of prison life.  Attempts to game the system under the guise of RLUIPA should not be tolerated.  However, despite the specter of prison and court scrutiny of every "sincerely-held religious belief" untethered to an outside governing body which eases the burdens of prison life, applicable RLUIPA jurisprudence does not allow – or even suggest – that this issue may be addressed by the Court on a motion for summary judgment.  As frequently stated, evaluating the sincerity of an inmate's religious beliefs is "almost exclusively a credibility assessment."  *Snyder v. Murray City Corp.*, 124 F.3d 1349, 1353-54 (10th Cir. 1997) (noting that the sincerity of a plaintiff's purported beliefs "can rarely be determined on summary judgment").  Based on the evidence before it, the Court cannot find, as a matter of law, that Plaintiff's religious beliefs are not sincere.  Accordingly, the Court finds that Defendant has not met its burden of showing that there is no genuine issue of material fact on this element of Plaintiff's RLUIPA claim.

### 2.    Substantial Burden Imposed by Government

The existence of a genuine issue of material fact regarding the sincerity of Plaintiff's beliefs precludes entry of summary judgment in favor of Defendant.  Nevertheless, in an

effort to thoroughly address Defendant's arguments, the Court next considers the third element of Plaintiff's RLUIPA claim, i.e., whether Plaintiff's exercise of "Judaeo-Christianity [sic]" is subject to a substantial burden.  While it is clear that RLUIPA's protection extends beyond practices that are central to a religion, 42 U.S.C. § 2000cc-5(7)(A), it is equally clear that not every infringement on religious exercise will constitute a substantial burden. *Abdulhaseeb*, 600 F.3d at 1316.  "The practice burdened need not be central to the adherent's belief system, but the adherent must have an honest belief that the practice is *important* to his free exercise of religion."  *Id.* (emphasis added) (citing *Sossamon v. Lone Star State of Texas,* 560 F.3d 316, 332 (5th Cir. 2009)).  In short, a burden on religious exercise is "substantial" under RLUIPA if it denies a plaintiff "reasonable opportunities" to engage in such exercise.  *Caruso v. Zenon*, No. 95-MK-1578, 2005 WL 5957978, at *17 (D. Colo. July 25, 2005); *see also Smith v. Allen,* 502 F.3d 1255, 1278 (11th Cir. 2007) ("[A]t a minimum the substantial burden test requires that a RLUIPA plaintiff demonstrate that the government's denial of a particular religious . . . observance was more than an inconvenience to one's religious practice.")

The Court of Appeals for the Tenth Circuit has provided several examples of when a burden on religious exercise becomes "substantial."  In *Abdulhaseeb*, the Court held that the government imposes a "substantial burden" on a prisoner within the meaning of RLUIPA when it does any of the following: (1) requires participation in an activity prohibited by a sincerely-held religious belief; (2) prevents participation in conduct motivated by a sincerely-held religious belief; or (3) places substantial pressure on the prisoner to not engage in conduct motivated by his sincerely-held religious belief or to engage in conduct contrary to his sincerely-held religious belief (e.g., where the government presents the

-22-

prisoner with an illusory choice where the only realistically possible course of action tramples on his sincerely-held religious belief). 600 F.3d at 1315; 42 U.S.C. § 2000-1(a).

CDOC recognizes a faith group it calls "Messianic Jewish." *Ex. A-1, Aff. of Proffit* [#89-1] at 25 (Attach. 1, CDOC Admin. Reg. No. 800-01).  Defendant told Plaintiff that the tenets and requirements of his professed religion, as submitted to CDOC, were equivalent to Messianic Judaism.  *Id.* at 32-34 (Attach. 2, AR Form 800-01H dated Jan 30, 2008; Attach. 3, Def.'s Response to AR Form 800-01H dated Jan 30, 2008).  However, according to CDOC, the diet considerations, fast days, holy days, proscription days, worship practices, and faith items of Messianic Judaism are identical to those of the faith group it calls "Jewish." *Ex. A-1, Aff. of Proffit* [#89-1] at 24-25 (Attach. 1, CDOC Admin. Reg. No. 800-01).  Defendant provides no explanation for why "Jewish" and "Messianic Jewish" are identical pursuant to the terms of CDOC's faith-group recognition listings. *See id.*

In attempting to designate Plaintiff as a Messianic Jew, Defendant has essentially provided Plaintiff with a Catch-22.  If Plaintiff chooses to list himself as a Messianic Jew, which Defendant avers is closest to Plaintiff's professed religious beliefs, then he is prohibited from participating in Christian-based events, such as Communion, because CDOC only permits Messianic Jews to practice observances that those designated as "Jewish" may practice.  If Plaintiff chooses to list himself as a Protestant or as a member of some other Christian religion, then he is prohibited from participating in Jewish-based events such as Ta'anit Esther and the Passover Seder.  Further, the Court notes that it takes up to four weeks to change one's religious designation once a request has been submitted to CDOC and, once a change has been made, an inmate is not permitted to make another request for one year.  *See Ex. A-1, Aff. of Proffit* [#89-1] at 40 (Attach. 8,

Memo. from McCormick to Pl., dated Mar. 7, 2008).  These regulations thus effectively preclude Plaintiff from participating in the observances that he professes are important to his religion.  This ongoing prevention of attendance from an entire series of religious events constitutes a substantial burden on Plaintiff's religion.

RLUIPA provides that a substantial burden on Plaintiff's religious exercise is permissible only if Defendants can show that the "imposition of the burden on [Plaintiff] (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1(b)(1); *Abdulhaseeb*, 600 F.3d at 1312.  Defendant asserts that three interests are served by denying Plaintiff participation in Communion, Ta'anit Esther, and the Passover Seder. *Motion* [#89] at 11-12.

First, Defendant argues that it has an interest in denying Plaintiff the option to participate in both Jewish and Christian services because doing so would aid the government's interest in "ensuring that offenders are treated uniformly." *Id.* at 11.  This argument is unavailing.  Despite Defendant's purported interest in fairness, RLUIPA does not permit prison officials to "administer the religious exercise of its inmate population based upon [their] assessment of the importance of the requested practice to the religious denomination professed by the inmate." *Amaker v. Goord*, No. 06-CV-490W(Sr.), 2007 WL 4560596, at *7 (W.D.N.Y Mar. 9, 2007) (unpublished decision).  Therefore, Defendant's dislike of "accommodating individual religious beliefs which do not conform to the generally accepted practices of a recognized religious group" may not reflect a compelling governmental interest.  *Id.* (preventing inmates classified as part of the "Nation of Islam" from having dreadlocks because only those classified as "Rastifarian" were permitted to

-24-

have the hairstyle imposed a substantial burden on the plaintiff's religious exercise). "Because it is not appropriate for [CDOC] to restrict [Plaintiff's] religious practice to those practices which conform to [CDOC's] interpretation" of religious beliefs, the Court finds that Defendant's first justification for prohibiting Plaintiff from participating in Communion, Ta'anit Esther, and the Passover Seder is insufficient to require entry of summary judgment in Defendant's favor.  *Id.* at *8.

Defendant cites the government's interest in "maintaining order within the prison facility" as its second justification for denying Plaintiff participation in Communion, Ta'anit Esther, and the Passover Seder.  *Motion* [#89] at 11.  The Court recognizes that prison safety and security are compelling governmental interests.  *Cutter*, 544 U.S. at 725.  However, in this case, prison officials have determined that permitting other inmates to participate in Communion, Ta'anit Esther, and the Passover Seder "does not impose an insurmountable threat to [CDOC] security."  *Amaker*, 2007 WL 4560596, at *7.  Additionally, Defendant does not provide evidence that suggests that permitting Plaintiff to participate in Communion, Ta'anit Esther, or the Passover Seder would have an unusual impact on security.  The Court therefore finds that Defendant's general security concerns may not justify the substantial burden placed on Plaintiff's religious exercise, and entry of summary judgment on this basis would not be proper.  *See id.*

Finally, the government cites its interest in "requiring that offenders follow rules in order to participate in particular religious activities."  *Motion* [#89] at 12.  As the Court's earlier discussion has already made clear, this argument is disingenuous.  Even if Plaintiff were to follow the rules regarding participation in each religious event, such as making timely requests and meeting other necessary criteria, Plaintiff would still not be permitted

to participate in the panoply of observances that he deems important to his religion. Therefore, although the Court does not condone or excuse Plaintiff's failure to follow those rules, the Court finds that Defendant's justification may be an insufficient basis for prohibiting Plaintiff from having the option of participating in the range of religious observances he deems important to his religion. Accordingly, entry of summary judgment on this basis would be improper.

Accordingly, in light of the standard for considering a Rule 56 motion, the Court finds that Defendant has not met his burden of showing that there is no genuine issue of material fact with respect to Plaintiff's RLUIPA claim. Accordingly, the Motion should be denied.

## IV. Conclusion

For the foregoing reasons, the Court respectfully **RECOMMENDS** that Defendant's **Motion for Summary Judgment** [#89] be **DENIED**.

The Court further *sua sponte* **RECOMMENDS** that the District Court order the parties to show cause as to why an expert witness should not be appointed by the Court pursuant to Fed. R. Evid. 706(a), for the purpose of evaluating CDOC's faith group designations in connection with Plaintiff's asserted belief system.[11]

IT IS HEREBY **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen (14) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. A party's failure to serve and file specific, written objections waives de novo

---

[11] "The appointment of an expert pursuant to Rule 706 is not intended to further partisan interests of any party, but to aid the Court, through the services of an impartial expert in its assessment of technical issues." *Harper v. Urbano*, No. 07-cv-00750-REB-KMT, 2010 WL 1413107, at *1 (D. Colo. Apr. 1, 2010) (citations omitted).

review of the Recommendation by the District Judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996).   A party's objections to this Recommendation must be both timely and specific to preserve an issue for de novo review by the District Court or for appellate review.  *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated:  January 24, 2012

BY THE COURT:

Kristen L.  Mix
United States Magistrate Judge